Pension Fund of the City of
Pittsburgh Appeal.

112

Argued April 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Nicholas R. Stone*, with him *Stone and Raynovich*, for appellant.

No appearance entered nor brief submitted for appellee.

OPINION BY SPAETH, J., March 29, 1976:

This is an appeal from an order attaching funds under the control of the City of Pittsburgh Pension Fund.

On July 18, 1974, the lower court issued an order requiring the relator to pay the relatrix $160 per month, representing $150 for support and $10 against accumulated arrearages of $300. When the relator did not make the required payments, the relatrix petitioned for the enforcement of the order. At the hearing on the petition the relator testified that his monthly income consisted of Social Security payments of $244.70 and a retirement pension of $357.50 from the City of

Pittsburgh. On August 13 the lower court issued an order

> "that the Pension Fund of the City of Pittsburgh, having funds due to the above named defendant, pay to the Family Division .... One Hundred and Sixty ($160.00) Dollars a month (allocated to the monthly support order of $150.00 and $10.00 on arrearages of $555.13) from the pension allowance of the said defendant until further order of this court." Record at 14a.

When the Pension Fund did not comply with this order, the court issued a rule to show cause why the Executive Director and the Board of Directors of the Pension Fund should not be held in contempt. Two hearings were held, and on November 14 the court re-issued its August 13 order, only modifying the order to change the statement of arrearages to $1,005.13. This appeal by the Pension Fund followed.

I

The Act of May 28, 1915, P.L. 596, 53 P.S. §23561 *et seq.*, governs pension funds of cities of the second class. Because Pittsburgh is classified as a city of the second class, its pension fund is regulated by the Act.[1] Section 12, 53 P.S. §23572, provides that:

> "The compensation or pension herein mentioned shall not be subject to attachment or execution, and shall be payable only to the beneficiary designated by this act, and shall not be subject to assignment or transfer."

---

1. The Act of June 25, 1895, P.L. 275, §1, as amended Aug. 31, 1971, No. 98, P.L. 413, §1, 53 P.S. §101, established four classifications of cities based upon their population. In 1970, according to the U.S. Bureau of the Census, Pittsburgh had a population of 520,117. It is therefore a city of the second class ("[cities] containing a population of five hundred thousand and under one million shall constitute the second class." 53 P.S. §101.)

This provision appears free of any ambiguity.[2] The lower court, however, found that two later statutes "operate to amend and partially repeal the Act of 1915"; in the lower court's view, these statutes show that the legislature has "changed its philosophy toward attachment of wages for support of the wife and children." Opinion at 4.

—A—

The first of the two statutes relied on by the lower court is the Act of May 10, 1921, P.L. 434, §1, 48 P.S. §136, which provides in relevant part: "Whenever any court of competent jurisdiction has made an order or entered a decree of judgment against any husband requiring him to pay any sum or sums for the support of his wife or children or both, the court may issue the appropriate writ of execution against any property, real or personal, belonging to the defendant to enforce said order ... and the said court may issue a writ of attachment ... against any money or property to which said husband is entitled, whether under what is known as a spendthrift trust or otherwise; ... and, in cases of levy on, or attachment of, any trust, said levy ... shall remain a continuing levy until the order, decree, or judgment has been paid in full ... The person against whom such an order, decree, or judgment is made shall not be entitled to the benefits of any exemption law now in force or hereafter passed. The provisions of this act shall apply to any trust, whether it is such a trust as is known as a spendthrift trust or otherwise ..."

We recognized in *Commonwealth v. Berfield*, 160 Pa. Superior Ct. 438, 441, 51 A.2d 523, 525 (1947), that "the husband's liability is imposed by law as an incident of

2. The Statutory Construction Act, Act of Nov. 25, 1970, P.L. 707, No. 230, added Dec. 6, 1972, No. 290, P.L. 1339, §3, 1 Pa.C.S. §1921(b), provided that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

the marital status," and that "a wife may look to a fund payable to her husband, however safeguarded by law or by the language of its creation, from attachment by others." We reaffirmed this view in *Commonwealth ex rel. Roviello v. Roviello*, 229 Pa. Superior Ct. 428, 435, 323 A.2d 766, 771 (1974), there saying that the husband's duty of support "has long been considered by the state as a 'paramount' obligation." Accordingly, we have subjected a husband's interest in a spendthrift trust to a wife's order of support. *Gessler v. Gessler*, 181 Pa. Superior Ct. 357, 124 A.2d 502 (1956). In *Lippincott v. Lippincott*, 349 Pa. 501, 37 A.2d 741 (1944), our Supreme Court did the same. *See also Stewart's Estate*, 334 Pa. 356, 5 A.2d 910 (1939).

However, we have never given the Act of May 10, 1921, the broad construction placed upon it by the lower court. To the contrary, in *Wargo v. Wargo*, 190 Pa. Superior Ct. 356, 358, 154 A.2d 339, 340-341 (1959), we limited the application of the Act, stating: "It is apparent that the primary object of this statute was to authorize the collection of support orders from spendthrift trusts." Furthermore, we have never interpreted either the Act or the general policy regarding a husband to support his wife to mean that the legislature may not preclude attachment. Indeed, in *Commonwealth v. Berfield, supra* at 441-442, 51 A.2d at 525, we specifically recognized the legislature's power to immunize a fund from attachment:

> "Thus, it has been consistently held that a wife may look for support to a spendthrift trust, though created for the sole benefit of her husband [citations omitted]. So also, an order against a husband for support can be enforced out of workmen's compensation payments notwithstanding the provision ... exempting such payments from levy, execution and attachment. On the same principle, in spite of statutory exemption from attachment ... a wife may enforce the payment of her support out of wages due her husband in the hands of his employer [citation

omitted]. The above authorities however go no farther than to say that in specific circumstances a wife is not barred from looking to a fund for her support which is exempt from attachment as to others. But certainly Congress .... has the power to immunize a fund from every attachment, including process on behalf of a wife for the collection of a support order. The Railroad Retirement Act is such legislation and must be so construed .... The provision of the act exempting the fund from attachment was not in aid of delinquent husbands seeking to evade their responsibilities but was intended solely to relieve the Federal authorities as administrators of the fund from the annoyance of attachment of pensions or annuities in their hands, payable to railroad employees after retirement."

*Commonwealth v. Mooney*, 172 Pa. Superior Ct. 30, 92 A.2d 258 (1952), is a similar case. There the statute exempted retirement allowances paid by the City of .Philadelphia Police Pension Fund from attachment, execution, or levy.[3] We explained the policy behind this exemption:

"There is agreement that funds in the hands of municipalities and governmental agencies, owing to individuals, are not subject to attachment because of general public policy that the government shall be free from the annoyance and uncertainty arising out of disputes between individuals entitled to payments from public funds and others claiming a right therein by attachment." *Id.* at 32, 92 A.2d at 259.

We also observed that if the legislature had intended to make funds held by governmental agencies subject to attachment, it could have so provided, as it had in the case of spendthrift trusts. We noted that instead, "[t]he legislature did not so provide; on the contrary, it used language ... which exempts such fund from attachment

---

3. Act of May 24, 1893, P.L. 129, §4, added June 10, 1947, P.L. 537, §2, 53 P.S. §764.

or other legal process of any kind." *Id.* at 34, 92 A.2d at 260.

This reasoning is applicable here. Section 12 of the Act of May 28, 1915, *supra*, 53 P.S. §23572, is an unambiguous statement by the legislature of its intention to immunize the Pension Fund from attachment. The Pension Fund is an agency of the City of Pittsburgh; on the Fund's board sit the Mayor, City Controller, and President of City Council. In providing that the Fund is immune from attachment, the legislature once again gave effect to the policy that the administration of public funds is to be free from the uncertainties that may arise from private disputes. To conclude that such an implementation of settled policy has been undone by a statute primarily concerned with spendthrift trusts would be unwarranted.

This conclusion may be confirmed by the application of familiar principles of statutory construction. The Statutory Construction Act provides that "[t]he title and preamble of a statute may be considered in the construction thereof." 1 Pa.C.S. §1924. The title of the Act of May 10, 1921, is: "Execution to enforce orders or decrees for support; spendthrift or other trusts subject to; lien; exemptions; procedure." Since the only form of property named is "spendthrift or other trusts," the logical conclusion to be drawn from this title is that the legislature intended to refer only to such trusts, not to all possible sources of income available to a delinquent husband. This interpretation is reinforced by the provision that "this act shall apply to *any trust,* whether it is such a trust as is known as a spendthrift trust or otherwise." (Emphasis added.) The provision that the court may attach "any money or property to which said husband is entitled, whether under what is known as a spendthrift trust or otherwise," is not to the contrary. The general principle of construction is that words of general import are limited by specific terms that immediately follow and relate to the same subject

matter. *Bell Telephone Company of Pennsylvania v. Public Service Commission,* 119 Pa. Superior Ct. 292, 181 A. 73 (1935).

Our courts have never favored the repeal of statutes by implication and have said that repeal will not be implied unless there exists "an irreconcilable conflict between statutes embracing the same subject matter." *Kelly v. City of Philadelphia,* 382 Pa. 459, 471, 115 A.2d 238, 244 (1955). *See also Parisi v. Phila. Zoning Bd. of Adj.,* 393 Pa. 458, 463, 143 A.2d 360, 363 (1958). Here, the Acts of May 28, 1915, and May 10, 1921, do not embrace the same subject matter; the first immunizes from attachment pension funds payable to retired city employees, while the second authorizes execution against spendthrift trusts to enforce support orders. Thus, there is no conflict between the two Acts, and we cannot agree with the lower court that the Act of 1921 partially repealed the Act of 1915.

—B—

The second of the two statutes relied on by the lower court is the Civil Procedural Support Law, Act of July 13, 1953, P.L. 431, §9, as amended, July 3, 1957, P.L. 452, §1, 62 P.S. §2043.39(c), which authorizes a court to enforce support orders by attaching the "wages, salary or commissions of any person owing a duty of support..." The lower court reasoned that income from a pension fund was identical to "wages, salary or commissions." Thus the court stated: "[Relator] paid part of his wages into the pension fund to qualify for the pension. We fail to see why these monies should lose their character as wages purely because they are now part of a pension fund ..." Opinion at 4.

We cannot agree with this reasoning. The section of the Civil Procedural Support Law cited by the lower court is specifically directed at the earnings of defendants who are currently employed. Thus it directs that "[a] certified copy of the order of support shall be served

on the *employer* ...", and that the copy shall contain "an order directing the *employer*" to account for the defendant's wages and to "make no payment to the defendant over 50% of the amount due him ...." (Emphasis added.) Here, the relator is a retired former employee of the City of Pittsburgh; it cannot be maintained that the Pension Fund is his employer. "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. §1903(a). "[W]ages, salary or commissions" does not include the benefits received by the relator from the Pension Fund.

Furthermore, the legislation governing the Pension Fund explicitly distinguishes between compensation from employment and compensation from a pension fund. Section 3 of the Act of May 28, 1915, *supra*, 53 P.S. §23563, provides in relevant part:

> "Every person now or hereafter employed .... of the age of sixty years and upwards, who shall have been so employed for a period of twenty years or more, shall, ... be retired from service, and shall during the remainder of his or her life receive the pension or compensation fixed by this act, subject to such qualifications as are herein contained ..."

Should the pensioner re-enter government employment, the pension board is permitted to suspend payments from the fund. Section 14 of the Act, added April 26, 1933, P.L. 81, No. 53, §3, 53 P.S. §23573, provides the pension board with "the authority to suspend pension payments to such pensioner during the period of such employment." Thus, in providing immunity from attachment, the legislature dealt only with compensation from a pension fund; no immunity was provided for compensation from employment.[4]

---

4. In the present case, the relator's wages from his city employment were attached by court order, July 18, 1973. Record at 76a.

## II

The lower court assumed that its only alternative to attaching the relator's pension was to send him to jail: "It seems clear to this Court that the Legislature never intended that a Judge incarcerate a husband when there are funds of his that are available for use in payment of the support order." Opinion at 4.

In *Commonwealth v. Berfield, supra* at 442-443, 51 A.2d at 525, we said: "Relatrix, in enforcing payment of the support order, might have attached the proceeds of annuity payments in the hands of her husband when actually received by him." And in *Commonwealth v. Mooney, supra* at 35, 92 A.2d at 260, we distinguished funds in the control of a governmental agency from funds in the hands of a delinquent husband, and noted that the payments were attachable when received by the husband.

The order of the lower court is reversed.