[Civ. No. 50400. First Dist., Div. One. Aug. 17, 1981.]

RITA GIOVANNONI, Plaintiff and Appellant, v.
PETER J. GIOVANNONI, Defendant and Respondent.

COUNSEL

Cary L. Dictor and Rapoport & Lewis for Plaintiff and Appellant.

Paul M. Hupf and Steven L. Pollak for Defendant and Respondent.

OPINION

GRODIN, J.—Rita and Peter Giovannoni were married in 1949. After 25 years, Rita petitioned for dissolution of their marriage. An interlocutory decree was granted on May 12, 1975, and a final judgment issued on July 1, 1975. The decree divided their community property pursuant to a stipulation which the court found to be fair and equitable, and awarded to each of them as separate property the personal property then in their respective possession.

Three years later, Rita Giovannoni brought this action seeking (among other things) declaratory relief, partition, and an accounting, to establish her interest in pension benefits earned during the marriage by

her former husband. Relying principally upon *Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10], she contended that res judicata principles did not bar her claim because there had been no adjudication in the dissolution proceedings of her interest in the pension. The trial court, after hearing, rejected her contention and entered judgment dismissing her action. It is from that judgment that Rita appeals.

## Factual and Procedural Background

At the time of dissolution, Peter was a member of a pension plan which was the product of negotiation between the Retail Clerks' Union and his employer. He had not retired, and was receiving no payments from the plan. Rita's petition for dissolution, however, listed the pension as an asset and claimed it as community property.

After the petition was filed and served on Peter, Rita and Peter met with Rita's attorney to discuss matters, and at that meeting the attorney advised Rita that the pension was of "no value" to her. Thereafter, Peter obtained counsel and filed a response to the petition in which he claimed that the pension was his separate property.

While the dissolution matter was pending, Rita's attorney asked Peter's attorney to verify whether Peter had any vested interest in the pension. Peter's attorney telephoned either Peter's union or the pension trust fund office, and was informed that Peter had no interest in the pension, that the pension had no value, and that the pension was not vested. He relayed that information to Rita's attorney. Rita's attorney conducted no independent investigation concerning the pension. He did not obtain or examine any documents bearing upon the nature of Peter's interest in the pension; and, by his own admission, he had no understanding of what might have been required for the interest to vest.

Prior to trial, Rita's attorney prepared a pretrial statement, which Rita signed, making no reference to the pension as an asset subject to disposition by the court. On the morning of the trial, he again advised her that the pension was of no value to her. And at the trial, he recited a stipulated division of community assets. Among other things, it was stipulated "that there was no vested interest" in the pension. At the conclusion of the hearing, the court granted an interlocutory judgment of dissolution and ordered that the community property be divided in accordance with the parties' stipulation.

Approximately 3 years later Peter elected to retire, at age 57, and began receiving monthly retirement payments. Rita learned of this, and upon inquiry it was determined that in fact Peter's entitlement to a pension upon eventual retirement had been fully vested, i.e., not subject to forfeiture upon termination from employment (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]) at the time of the dissolution proceedings, and was thus clearly subject to division as a community asset at that time. Rita then instituted this proceeding, contending not only that she was entitled to a share of the pension as a community asset but that her husband was guilty of fraud, oppression, and malice as well. The trial court made findings in favor of Peter on these factual claims, to the effect that Peter at no time concealed or withheld from Rita, her attorney, or her husband's attorney, any information requested of him concerning the pension. It also found that Peter's attorney neither concealed any information he was obligated to supply nor intentionally misrepresented any facts concerning the pension. These findings are not challenged on appeal. The court also found that Peter "abandoned his claim that the pension asset was his separate property interest prior to the Interlocutory hearing." It held, nevertheless, that the doctrine of res judicata barred Rita's claim for a share of pension benefits, and entered judgment accordingly.

## Discussion

■ It has long been the rule that "[i]nterlocutory divorce decrees are res judicata as to all questions determined therein, including the property rights of the parties. [Citations.] ■ If a property settlement is incorporated in the divorce decree, the settlement is merged with the decree and becomes the final judicial determination of the property rights of the parties." (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 470-471 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].) And, that rule precludes readjudication of determined questions on the basis of mistake, in the absence of fraud or violation of a spouse's duty of full disclosure.

For example, in *Jorgensen v. Jorgensen* (1948) 32 Cal.2d 13 [193 P.2d 728], the Supreme Court held that a wife was bound by her stipulation that certain assets were the separate property of her husband, though it turned out later that was not the case. Then Associate Justice Traynor, writing for the court, stated: "[The wife] is barred from ob-

taining equitable relief by her admission that she and her attorney did not investigate the facts, choosing instead to rely on the statements of the husband as to what part of the disclosed property was community property." (*Id.*, at p. 23.)

Similarly, in *Kulchar* v. *Kulchar, supra*, 1 Cal.3d 467, the court held that a husband was bound by his stipulation, incorporated in the divorce decree, to indemnify his wife against liability for any taxes which may be due, despite the fact that he was unaware at the time that some $22,000 in federal income taxes were due on account of theretofore undisclosed income accumulated during the marriage by a New Zealand corporation in his wife's name. The husband and his attorney were aware of the New Zealand assets, but abandoned investigation after the wife stated that a law firm had advised her the New Zealand income was not taxable. Chief Justice Traynor observed: "Public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining all the facts. A rule which would permit the re-opening of cases previously decided because of error or ignorance during the progress of the trial would in a large measure vitiate the effects of the rules of res judicata." (*Id.*, at p. 472.)

Prior to *Henn* v. *Henn, supra*, 26 Cal.3d 323, there existed disagreement among the Courts of Appeal as to whether these principles barred determination of community property interests in assets which had not been brought to the attention of the court at the time of a dissolution decree, and thus had never been the subject of adjudication. In that case, interlocutory and final decrees of dissolution were entered in 1971 without mention of a fully matured federal military retirement pension that Henry, the husband, was receiving at the time. The pension had been partially earned during the marriage, and its existence was known to Helen, his wife, at the time of the dissolution proceedings, but the pleadings made no mention of the pension, and Henry conceded that the court made no determination with respect to the pension. Whether such a pension could be divided as community property without violating the supremacy clause of the United States Constitution, while an open and arguable question at the time of the dissolution, was not definitively decided by the California Supreme Court until 1974. (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 595 [111 Cal.Rptr. 369, 517 P.2d 449], cert. den., 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41].) In 1976, Helen filed a complaint seeking division of the pension as community property.

The Supreme Court held that the doctrine of res judicata did not bar her claim. That doctrine operates as a bar, the court observed, "'to the maintenance of a second suit between the same parties on the same cause of action'" and it "comes into play in situations involving a second suit, not necessarily between the same parties, which is based upon a different cause of action," in which case "'[t]he prior judgment is not a complete bar, but it "operates [against the party against whom it was obtained] as an estoppel [fn. omitted] or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action."'" (*Henn v. Henn, supra*, 26 Cal.3d at pp. 329-330.) Neither aspect of the doctrine was applicable to the original judgment of dissolution and property settlement in that case. "Since it is conceded that the issue of Henry's military pension was not before the court which issued the final decree, the judgment of that court cannot be said to have extinguished Helen's putative interest in that asset." (*Id.*, at p. 330.)

The court also held that Helen's claim was not barred by the doctrine of collateral estoppel: "[T]he rule prohibiting the raising of any factual or legal contentions which were not actually asserted but which were within the scope of a prior action, 'does not mean that issues not litigated and determined are binding in a subsequent proceeding on a new cause of action. Rather, it means that once an issue is litigated and determined, it is binding in a subsequent action notwithstanding that a party may have omitted to raise matters for or against it which if asserted may have produced a different outcome.' Hence, the doctrine of collateral estoppel is not applicable here because Henry failed to demonstrate that Helen is relying upon some specific factual or legal contention which would have been relevant to the adjudication of the parties' rights to the property distributed in the 1971 decree if it had been raised." (*Id.*, at p. 331.)

Peter would have us distinguish *Henn* on the ground that in that case the disputed pension was ignored at the time of the dissolution proceeding, whereas here the matter came to the court's attention through Rita's petition and the subsequent stipulation of the parties. A similar argument was recently rejected by the Court of Appeal in *Miller v. Miller* (1981) 117 Cal.App.3d 366 [172 Cal.Rptr. 745] in which a stipulation regarding spousal and child support payments made reference to the husband's military pension as part of his gross earnings. The court stated: "This reference made to the military pension in the stipulation cannot be regarded as an attempt to litigate their rights in this particu-

lar property. From the face of the stipulation we conclude the pension benefits were not contemplated by the parties as a divisible community asset; nor can we say from the record here made that the award of the pension to the husband was a consideration for Mrs. Miller's receiving higher support payments or a greater share of the community property. Thus the pension benefits were not mentioned, placed in issue, or adjudicated, nor divided by the court or the parties so far as here made to appear.... [T]he crucial question is whether the benefits were actually litigated and divided in the previous proceeding. [Citation.] Here, although the pension was known to both parties, it was not awarded as an item of the marital community to one or the other of the parties." (*Id.*, at pp. 370-371; see also *Hill* v. *Hattrem* (1981) 117 Cal.App.3d 569 [172 Cal.Rptr. 806], discussing equitable considerations applicable to determination of community interests in retirement benefits.) These principles are applicable here.

This is not a situation in which one of the parties seeks relief from a stipulation characterizing particular property as community or separate. While the existence of the pension was obviously known to the parties, and at one time asserted to be an asset subject to disposition by the court as either community property or separate property, by the time the court entered judgment the matter of the pension had been withdrawn from the court's consideration by mutual agreement, so that the court was not called upon to award it, and did not award it, as community property, separate property, or any property at all. We conclude that *Henn* v. *Henn, supra*, 26 Cal.3d 323, controls, and that the trial court's judgment of dismissal was in error.

Reversed and remanded.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied September 16, 1981, and respondent's petition for a hearing by the Supreme Court was denied October 14, 1981.