467 A.2d 33

**Patricia YOUNG, Appellant,**

v.

**John M. YOUNG & Julie Young, his wife.**

Superior Court of Pennsylvania.

Argued March 24, 1983.

Filed Oct. 7, 1983.

Petition for Allowance of Appeal Granted Feb. 27, 1984.

Richard J. Shiroff, Easton, for appellant.

Nicholas Noel, III, Bethlehem, for appellees.

Before HESTER, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

Pursuant to an order of the Superior Court, Chancery Division, Warren County, New Jersey, John and Patricia Young were divorced on July 13, 1977. Subsequently, that

court entered an order distributing the assets of the marriage. Included in such distribution was a provision for Patricia Young to receive one half of the pension payments received by John Young from the Police Pension Fund of the City of Easton, Northampton County, Pennsylvania. John refused to pay over to Patricia her share of the pension payments and he was adjudged to be in contempt by the New Jersey court.[1] He has since married Julie Young and has taken up residence in Florida.

Patricia instituted proceedings in Northampton County. After a hearing, the New Jersey orders were registered and adopted by the Court of Common Pleas. John was allowed leave to petition for a modification of such orders. His petition to modify was dismissed. After further legal maneuvering, appellant filed a petition under 23 P.S. 403 [2] seeking, among other relief, to attach the pension payments. The court denied the petition finding such payments were exempt from attachment. Appellant perfected this appeal.

The sole issue before this court is whether appellee's vested pension, which is currently being paid, from the police department of Easton, may be subjected to attachment pursuant to, or as a result of, an order of equitable distribution.[3] At issue is the interaction between the Di-

---

1. All orders of court entered in New Jersey have been certified to the Court of Common Pleas of Northampton County.

2. **Section 403. Injunction against disposition of property pending suit and decree rendering fraudulent transfers null and void**
   (a) Where it appears to the court that a party is about to remove himself or herself or his or her property from the jurisdiction of the court or is about to dispose of, alienate, or encumber property in order to defeat alimony pendente lite, alimony, child and spousal support, or similar award, an injunction may issue to prevent such removal or disposition and such property may be attached as provided by the Rules of Civil Procedure. The court may also issue a writ of ne exeat to preclude such removal.

3. Both parties make various claims as to their respective financial situations. However, entitlement to the marital property and determination of what is marital property was properly before the New Jersey Court but is not before this court.

vorce Code of 1980, 23 P.S. § 101 et seq. and the Judiciary Act of 1976, 42 Pa.C.S.A. § 101 et seq.

The City of Easton, by ordinance, established a police pension fund pursuant to the Third Class City Code, 53 P.S. § 39301. Ordinance 1402, section 147.10 of the City code provides:

*Manner of benefit payments: Non-transferability.*

No pension or relief or any portion thereof granted under this article, or by the bylaws of the Police Association as a consequence thereof, shall be subject to any attachment or execution, but shall be payable only to the person specified or the dependents in the manner and form as provided in the bylaws of the association. Nor shall such pension or relief be subject to any assignment or transfer, under penalty or [sic] forfeiture.

The City elected, by ordinance No. 2476, section 147.20 of the City Code, to participate in the Municipal Retirement Law system. See 53 P.S. § 881.101 et seq. The Judiciary Act, 42 Pa.C.S.A. § 8124(b)(1)(vi) provides that retirement funds established under the Municipal Retirement Law "shall be exempt from attachment or execution on a judgment." [4]

The hearing court relying on the Judiciary Act held that a police pension could not be attached for purposes of satisfying an order of equitable distribution. Appellant argues that the Divorce Code cannot be reconciled with the above exemption provision of the Judiciary Act. She contends that the Act must give way to, or provide for, an exception to the exemption for equitable distribution.

The legislature has declared it to be the policy of this Commonwealth to:

---

**4.** Appellee contends that exemption is provided by 53 P.S. § 764. However, that section pertains to retirement allowances provided by § 761. Section 761 was repealed as to third class cities in 1931; § 764 has not been repealed. Appellant contends that exemption is provided for by *Id.* § 39351. We find that that provision pertains to employees other than the police and firefighters.

(6) Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

23 P.S. § 102(a)(6). Section 401(d)(6) explicitly includes retirement benefits in determining the distribution of the marital property. In achieving the desired goals, the courts are to exercise a broad range of powers. Subsections 401(c), and (g) provide:

(c) In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

. . . . .

(g) The court may impose a lien or charge upon the marital property assigned to a party as security for the payment of alimony or other award for the other party.

In short, appellant argues that the legislature has in effect bestowed the authority upon the trial court to attach municipal pensions, if necessary to effect economic justice.

While appellant relies on a number of cases from other jurisdictions, we must note that the majority of those cases predate *Com. ex rel. Magrini v. Magrini*, 263 Pa.Super. 366, 398 A.2d 179 (1979) and *Com. ex rel. Cerminara v. Cerminara*,[5] 239 Pa.Super. 111, 362 A.2d 1011 (1976); both decided by this court. The trial court found *Cerminara* controlling and distinguished *Magrini*. We must first review such cases.

**5.** Case name in Official Reporter: *Pension Fund of the City of Pittsburgh Appeal.*

In *Cerminara, supra,* the wife sought to enforce a support order by attaching the City pension funds payable to her retired husband. Pension funds of cities of the second class were exempt from attachment. 53 P.S. § 23572. The trial court found that two later statutes "operated to amend and partially repeal" the exemption from attachment; the legislature had "changed its philosophy" concerning attachment for support of a spouse and children. This court disagreed, finding § 23572 was unambiguous. One of the later statutes was limited to trusts, and did not include pensions. The second statute reviewed, the Civil Procedure Support Law 62 P.S. § 2043.39 (now found at 42 Pa.C.S.A. 6701–6713) authorized the courts to enforce support orders by attaching earnings. It was held that such enactment was limited to earnings of one currently employed; a pension fund was not to be viewed as an employer. Relying on *Commonwealth v. Mooney,* 172 Pa. Super. 30, 92 A.2d 258 (1952), it was noted that such exemption provisions arose from the public policy that government should be free from the annoyances and uncertainties caused by private disputes over entitlement payment from public funds. Had the legislature intended to make such funds subjected to attachment, it could have provided so.

The issue in *Magrini, supra,* was whether the Civil Procedure Support Law, *supra,* could authorize the attachment of a private pension fund even though the fund agreement included a nonattachment clause. This court distinguished *Cerminara* finding that in *Magrini* the public policy behind the exemption coincided with that of the support laws. Both were intended to provide some assurance that the support of the family would not be endangered. The court noted that the private pension exemption was provided for by statute, 40 P.S. § 515, reenacted at 42 Pa.C.S.A. § 8124(b)(1)(vii), but that the purpose of protecting a private pension differed from that of a governmental pension. The exemption of governmental pensions was a

means to avoid government involvement in a private dispute.

The *Magrini* court did not overrule *Cerminara,* but limited its application to the facts of that case, finding that the legislature had created a specific exemption for municipal pensions. Familial support was subordinated to the policy of alleviating local governmental involvement in private suits. The current appeal, even though dealing with equitable distribution, clearly falls within the scope of *Cerminara* and not *Magrini,* as a municipal pension is involved. We need only address the question of whether *Cerminara* continues to control under the new Divorce Code.[6]

In interpreting the various statutes, we are assisted by the Statutory Construction Act, 1 Pa.C.S.A. § 1901 et seq. If we assumed, as appellant would have us assume, that a conflict exists between the two enactments, we must construe the two, if possible, so that both may be given effect. *Id.* § 1933; *Appeal of Yerger,* 460 Pa. 537, 543, 333 A.2d 902, 905 (1975). The courts of Pennsylvania do not favor the repeal of statutes by implication unless there is an irreconcilable conflict between statutes applying to the same matter. *Consumers Ed. and Protective Ass'n. v. Schwartz,* 495 Pa. 10, 23 n. 17, 432 A.2d 173, 180 n. 17 (1981).

Throughout this construction process, a court should attempt to determine and give effect to the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). To do so we may look to the law as it existed at the time the statute was passed, *Id.* § 1921(c)(5); *Lisowski v. Mastromarco,* 281 Pa.Super. 303, 309 n. 4, 422 A.2d 180, 183 n. 4 (1980). We must assume that the legislature intended preexisting law

---

6. The current case involves equitable distribution whereas *Cerminara* dealt with support. It is not our intention to imply that support and equitable distribution should necessarily be treated similarly in other contexts. However, as equitable distribution is relatively new to this Commonwealth, we find that support law can provide us with some guidance in the current appeal.

to continue unless otherwise indicated. *Commonwealth v. Miller*, 469 Pa. 24, 27–28, 364 A.2d 886, 887 (1976). One further rule of statutory interpretation of particular concern to this appeal, is that a specific statute should control over one that is general. 1 Pa.C.S.A. § 1933; *Com. ex rel. Platt v. Platt*, 266 Pa.Super. 276, 287, 404 A.2d 410, 415 (1979).

The municipal pension exemption from attachment is a vintage creation of the legislature; 53 P.S. § 764, which appellees rely on, see footnote 3 *supra,* and which is a predecessor to 42 Pa.C.S.A. § 8124(b)(1)(vi), was first enacted in 1893. This court has applied similar exemptions, in the context of support cases, in *Mooney*, (1952), *supra* and again in *Cerminara* (1976), *supra*. We may assume the legislature was aware of such precedent, of both statutory and judicial origin in 1980 when it passed the Divorce Code. Yet the Code does not specifically address this point. Instead it makes a *general* grant of "full equity powers and jurisdiction ... which are necessary ... to effectuate the purposes of this act...." 23 P.S. 401(c).

The Divorce Code aims to foster economic justice; the Civil Procedure Support Law attempts to maintain the support of one's spouse and children. We are unable to say that the former is of a greater public importance than the latter. In light of the preexisting attachment exemptions, we must presume the legislature did not intend to make pension funds held by a municipal government attachable for the purpose of equitable distribution.[7] Had the legislators intended to do so, they could have so provided. See *Cerminara*, 239 Pa.Super. at 117, 362 A.2d at 1015. Instead we find that the Divorce Code was intended to allow the court of common pleas to invoke all existing practices, rules and procedures to effectuate the various stated pur-

[7]. Appellant argues that had she foreseen this result she would have proceeded differently. See *Kikkert v. Kikkert,* 177 N.J.Super. 471, 427 A.2d 76 (1981). We do not wish to minimize the difficulty in providing for division of future payments, but we are controlled by *Cerminara.*

poses. The Code does not create new procedural devices (except those explicitly created), nor does it excuse divorce cases from adhering to present procedural and substantive rules. The Divorce Code of 1980 must be read in the context of the whole law and not independently of it.

We must conclude that a municipal pension may not be attached for purposes of satisfying an order of equitable distribution. Appellant must utilize other means, whether at law or in equity, to enforce such order.[8]

The parties have also raised several other related points which we will dispose of summarily.

■■ Appellee questions our jurisdiction contending that the res, the pension fund, is outside of this court's jurisdiction. The fund is administered by a non-Pennsylvania concern. As the City of Easton has control over such fund we may exercise jurisdiction over it. *Selig v. Selig*, 217 Pa.Super. 7, 268 A.2d 215 (1970). The Commonwealth has a substantial and continuing relationship with the controversy as the fund was created under state law. *Id.*

■■ Appellant argues that we must give full faith and credit to the New Jersey orders. U.S. Const. art. 4 § 1. In *Stambaugh v. Stambaugh*, 458 Pa. 147, 329 A.2d 483 (1974) and *Platt v. Platt*, 227 Pa.Super. 423, 323 A.2d 29 (1974), the courts refused to give full faith and credit to an award of alimony. Under the old divorce law alimony or support was not permitted in Pennsylvania after the parties were divorced. In a like manner we refuse to give effect to an order of equitable distribution *in a way which is inconsistent* with the stated policy of this Commonwealth.

■■ It is also contended that the police pension fund violates Pennsylvania's Equal Rights Amendment, Const.

---

**8.** Furthermore, she may find that another jurisdiction is a more appropriate forum for any future attempts at enforcement.

Art. 1 § 28, as women had been denied the opportunity to join the police force and hence the pension plan. Appellant does not claim she was denied the opportunity to join the police but instead claims the pension through her former husband. She is not a proper party to attack the alleged discriminatory hiring practice and therefore we will not address such claim. *Slater v. Rimar, Inc.,* 462 Pa. 138, 154, 338 A.2d 584, 592 (1975).

Finally, appellant contends that the policy behind the exemption is no longer valid as computerization and automation of pension plans have eliminated the annoyances and uncertainties the legislature wished to protect municipalities from. *If* the policy has so changed, it is up to the legislature to acknowledge such. See *Stambaugh,* 458 Pa. at 158, 329 A.2d at 489.

Order affirmed.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I disagree with the Majority that vested pension benefits derived from public funds in contradistinction to private funds are not accessible, i.e., subject to attachment, for purposes of equitable distribution under the Divorce Code of 1980. 23 Pa.S.A. § 101 *et seq.*

With the passage of the Divorce Code of 1980, the Legislature ushered in a new era in Pennsylvania regarding divorce. The vestiges of the prior divorce law, which made no provision for alimony and equitable distribution of property, were remedied. 23 Pa.S.A. §§ 401 & 504. Additionally, the Legislature delineated certain, *specific* objectives it sought to achieve with the enactment of the Divorce Code of 1980. *See* 23 Pa.S.A. § 102. Of the various objectives itemized in Section 102, the one that is of particular relevancy to the case at bar is paragraph (6) of subsection (a),

wherein it provides that the policy of the Commonwealth of Pennsylvania is to "[e]ffectuate economic justice between parties who are divorced ... and insure a fair and just determination and settlement of their *property rights*." (Emphasis added) We find further elaboration of the afore-cited italicized terms in Chapter 4, captioned "Decree of Court; Property Rights and Costs". Therein, the Legislature set forth a plethora of factors to be weighed by a trial court proceeding to divide, distribute or assign "marital property" between the parties equitably. As is germane to the case *sub judice*, a trial court is required to consider, "The sources of income of both parties, including but not limited to medical, *retirement*, insurance *or other benefits*." (Emphasis added) 23 Pa.S.A. § 401(d)(6). It is interesting to note that in the "exceptions" portion of Section 401, the Legislature *only exempted* "[v]eterans' benefits ... from attachment, levy or seizure pursuant to the act of September 2, 1958, Public Law 85–857, 72 Statute 1229 [38 U.S.C.A. § 3101] ...." *Id.* at § 401(e)(6). *No other type of benefits were excluded, e.g., public (police) or private pension funds.* Thus, to the extent that local municipalities pass ordinances to the contrary, they are rendered nugatory by means of legislative fiat. *Cf. Turner v. May Corp.,* 285 Pa.Super. 241, 244 n. 1, 427 A.2d 203, 204 n. 1 (1981) ("... a local rule of court is subordinate to laws promulgated by our Legislature.").

Therefore, based on my interpretation of the current state of the law as to the treatment of pension benefits (whether they be private or public), *see generally Pietro v. Pietro,* 183 N.J.Super. 69, 443 A.2d 244 (1982); *Giovannoni v. Giovannoni,* 122 Cal.App.3d 666, 176 Cal.Rptr. 154 (1981); *Dean v. Dean,* 131 P.L.J. 62 (Allegheny Cty. 1983); *Paul W. v. Margaret W.,* 130 P.L.J. 6 (Allegheny Cty.1982), appellant should be afforded the right to have appellee's pension benefits attached for purposes of equitable distribution under the aegis of the Divorce Code of 1980. Since the Majority rules to the contrary, I must respectfully dissent.