[No. A031811. First Dist., Div. Two. Dec. 19, 1986.]

ELIZABETH HUDDLESON, Plaintiff and Respondent, v.
NEIL HUDDLESON, Defendant and Appellant.

1566

## COUNSEL

Timothy C. Wright, Nancy T. Templeton and Robertson, Alexander, Luther, Esselstein, Shiells & Wright for Defendant and Appellant.

Edward Irving Mears for Plaintiff and Respondent.

## OPINION

**ROUSE, J.**—Defendant husband appeals from a judgment apportioning and ordering distribution of 12.4 percent of each of his pension payments to plaintiff, his former wife. We affirm that judgment.

Husband began working at Lockheed Aircraft Corporation (Lockheed) on June 23, 1958. Lockheed provided a pension plan, totally funded by employer contributions, which vested after 10 years of service. On November 23, 1960, the couple was married. They separated on June 15, 1967.

Husband filed for dissolution in 1970, and on July 12, 1971, an interlocutory judgment was entered which incorporated the parties' property settlement agreement. That agreement made no mention of husband's pension. A final judgment of dissolution was entered on September 14, 1971.

Over 12 years later, in 1984, wife brought the action from which this appeal is taken, seeking distribution of the pension as an undistributed

community property asset. After a trial to the court, judgment was entered for wife on March 20, 1985. On April 17, 1985, the court rendered its statement of decision. Also on April 17, 1985, a second judgment, containing essentially the same disposition—that husband was to pay wife 12.4 percent of each pension payment as it was received—was signed and filed. On July 24, 1985, the trial court issued an order vacating the first judgment on grounds it had been mistakenly filed before the statement of decision. Husband makes a timely appeal.

## I.

Husband argues that the trial court erred in finding that wife had an interest in his pension benefits, because his pension was not vested as of June 15, 1967, when the parties separated. He contends that *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164], which overruled previous California authority by holding that a nonvested pension is a community asset, has no retroactive application here.

*Brown* arose in the context of an appeal from an interlocutory judgment which found no community interest in a pension which would not vest until two years in the future. (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 843, 847.) The *Brown* court denied the retroactive application of its ruling in cases in which "the property rights of the marriage have already been adjudicated by a decree of dissolution or separation which has become final . . . unless the decree expressly reserved jurisdiction to divide such pension rights at a later date." (*Id.,* at p. 851.) Husband contends that, since jurisdiction over the pension was not reserved here, the action of the trial court was contrary to the rule of *Brown.*

 The initial question before us is whether *Brown* is applicable here. *Brown* permitted only limited retroactivity as to nonvested pension rights. In *Brown,* the rights only vested two years after the dissolution. (15 Cal.3d 838, 847.) In this case, husband's pension vested after the parties separated, but before the interlocutory judgment. There is ample authority for the proposition that the crucial time to measure whether or not pension rights are vested is at the time of the dissolution—namely the date of the interlocutory decree. (*Giovannoni* v. *Giovannoni* (1981) 122 Cal.App.3d 666, 668-669 [176 Cal.Rptr. 154]; *In re Marriage of Smethurst* (1980) 102 Cal.App.3d 494, 497 [162 Cal.Rptr. 300]; *In re Marriage of Ward* (1975) 50 Cal.App.3d 150, 153 [123 Cal.Rptr. 234], disapproved on another point

in *In re Marriage of Brown, supra,* 15 Cal.3d 838, 851, fn. 14.)[1] Because husband's pension was vested at the time of the dissolution, the limited retroactivity rule of *Brown,* applicable to nonvested pensions, does not apply.[2]

 Regardless of whether the parties know of, or discuss, the vested pension, if the "court was not called upon to award it, and did not award it, as community property, separate property, or any property at all" *(Giovannoni v. Giovannoni, supra,* 122 Cal.App.3d 666, 672), then the pension is a missed asset subject to a postdissolution claim. *(Henn v. Henn* (1980) 26 Cal.3d 323, 330 [161 Cal.Rptr. 502, 605 P.2d 10].) In reliance upon *Henn* the trial court in this case determined the proportion of the pension which was earned during the marriage and awarded wife half of that community property interest, or 12.4 percent of each pension payment.[3]

Husband urges us to adopt a rule based upon language he finds in *Bowman v. Bowman* (1985) 171 Cal.App.3d 148 [217 Cal.Rptr. 174]. He argues that the only community property interest from the pension which wife can recover is that which derives from those portions of the pension which were "vested at the time of the parties' separation." *(Id.,* at p. 157.) This contention is incorrect and it is misreading of *Bowman.*

In *Bowman,* the postdissolution action to partition pension rights was brought as to rights which were both vested and nonvested at the date of dissolution. (171 Cal.App.3d 148, 157.) Finding that the wife was not barred by *Brown* from seeking partition as to the *vested* pension rights, the court then looked to how her community property interest should be calculated. It instructed the trial court to calculate the community property interest in the pension. This calculation was to be based on the period of the marriage—that is, pension benefits first earned during the time the parties were married up to the date of their separation.

---

[1]*Shaver v. Shaver* (1980) 107 Cal.App.3d 788 [165 Cal.Rptr. 672], upon which husband relies is inapposite. In *Shaver* the pension rights did not vest until almost a year after the final judgment of dissolution. *(Id.,* at pp. 790, 793.) Therefore, at the time of the dissolution the pension rights were nonvested and the retroactivity rule of *Brown* precluded their postdissolution division.

[2]In light of our finding that the pension was vested at the date of dissolution, we need not reach husband's contention that wife's postdissolution action to partition pension rights was foreclosed by the absence of an agreement by the parties to reserve jurisdiction over the pension.

[3]The court calculated wife's community share of the pension by taking the months of marriage (up to the date of separation) during which pension rights were earned by husband—79—and dividing that number by the total number of months of husband's employment—318. By this calculation the court determined the community interest in the pension to be 24.8 percent. Half of that amount, or 12.4 percent, of each pension payment it awarded to wife as her community property interest.

■ The court retroactively applied Civil Code section 5118, which provides that all "earnings and accumulations of a spouse" after separation are the separate property of that spouse. (Stats. 1971, ch. 1699, § 1, p. 3640.) Section 5118 is retroactively applicable to "all property rights, whenever acquired, that have not been finally adjudicated by a judgment from which the time to appeal has lapsed." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 594 [128 Cal.Rptr. 427, 546 P.2d 1371].)

Apparently reasoning that, since the omitted vested pension was not a property right which had been adjudicated by the final judgment of dissolution, the *Bowman* court calculated wife's community interest in those portions of husband's pension rights which vested prior to their separation. We do not read *Bowman* to hold that *unless* a pension has vested prior to separation the nonemployee spouse has no community interest in the pension.

Such a result would be contrary both to our own prior decision in *In re Marriage of Ward, supra,* 50 Cal.App.3d 150, and to the conception of pension benefits set out in the subsequent Supreme Court decisions of *In re Marriage of Brown, supra,* 15 Cal.3d 838, and *Henn v. Henn, supra,* 26 Cal.3d 323.

In *Ward,* the husband's retirement benefits vested some 12 days postseparation, and he relied on the provisions of Civil Code section 5118 for the proposition that the date of vesting was the date his pension benefits were "earned and accumulated." (50 Cal.App.3d 150, 153.) We rejected that argument, finding instead that, with the exception of the 12 days postseparation, the benefits had been earned during the marriage hence were community property. (*Id.,* at pp. 153-154, fn. 1, 154.) Thus, in substance, *Ward* held that, to the extent they had been earned prior to separation, pension rights were not postseparation "earnings" within the meaning of Civil Code section 5118.

The rationale of *Ward* is totally consistent with the rationale underlying the California Supreme Court's reasoning as set out in *In re Marriage of Brown, supra,* 15 Cal.3d 838, 845. Crucial to the *Brown* decision was the view that pension benefits are a form of "deferred compensation" which the employee earns incrementally beginning with the first day of his employment. (*Ibid.*) While the right to receive such benefits may not vest until some 10 or 20 years later, the benefits have been earned day by day throughout the employment. The date of vesting establishes only the moment when the employer becomes obligated to pay those benefits regardless of whether the employment relationship subsequently ends. (*Id.,* at p. 842.)

■ *Brown* noted that the employee has a property right in his pension benefits from the moment he begins to perform under his employment

contract. (15 Cal.3d 838, 845.) A spouse's entitlement to share in community property arises at the time the property is acquired (*Henn* v. *Henn, supra,* 26 Cal.3d 323, 330), therefore, pension benefits earned during marriage, up to the date of separation, are a form of deferred compensation or earnings of the employee spouse in which the nonemployee spouse has a community interest regardless of whether the pension is vested or nonvested. (*Brown, supra,* 15 Cal.3d at p. 847; *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 448 [181 Cal.Rptr. 910].)

Husband asks us to adopt the view that, because his pension only vested postseparation, the whole of his pension benefits, both those attributable to his work during marriage and those attributable to his postseparation work are his separate property. Such a view is neither compelled by *Bowman* nor consistent with the view of pension benefits which has been enunciated by our Supreme Court in *Brown* and *Henn.* Accordingly, we find that the trial court did not err in awarding wife that portion of the pension which represented deferred compensation earned by husband during the marriage up to the date of separation.

## II.

Husband also claims that wife waived her claim to his retirement benefits, and that the trial court erred in not finding such waiver. In its statement of decision the trial court found that plaintiff had not waived her rights in the pension because she did not know what her rights were with respect to it at the time she agreed to the property settlement.

Husband argues that wife either waived her interest in the pension because she knew of it but failed to assert any claim at the time of the dissolution or, alternatively, she waived her interest in the pension benefits by signing the property settlement agreement which provided that any property acquired from the date of the agreement would be the separate property of the acquiring spouse.[4]

In light of our finding that the community property interest in the pension arose incrementally during the marriage as husband rendered services to his employer, we cannot say that the pension benefits were "acquired" by husband after the property settlement agreement was signed. Therefore, as

---

[4]Paragraph 3(d) of that agreement provides: "It is hereby agreed that any and all property acquired by either of the parties to this agreement from and after the effective date of this agreement shall be the sole and separate property of the one so acquiring same; and each of the parties hereto does hereby waive any and all right in or to such future acquisitions and does hereby grant to the other all such future acquisitions of property as a sole and separate property of the one so acquiring the same."

a matter of law, the property settlement agreement, making after-acquired property separate property, did not constitute a waiver of wife's interest in the pension.

■ Likewise, we find there was substantial evidence from which the court could have concluded that wife did not waive her community interest by her conduct at the time of the dissolution. Wife testified that the pension was not valued because "We thought it had no cash value." She maintained that at the time she signed the property settlement agreement she believed that the pension was not an asset because it was of indeterminate present value. On this subject husband's testimony was in accord. When asked if he had thought it strange that the pension plan was not listed in the property settlement he responded, "I did not think it odd because since we stated there was no value to the Lockheed plan and I thought the attorneys knew what they were doing when they listed—did not list it." Both parties proceeded on the assumption that the plan did not represent a community property asset which could be divided. Under these circumstances the trial court did not err in concluding that wife's conduct did not amount to a waiver of her interest.

## III.

A general release was included in the property settlement agreement of the parties.[5] Husband contends that the trial court erred when it declined to find wife's claim against his pension was barred by that release.

■ Civil Code section 1542 provides that "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." The section "was intended by its drafters to preclude the application of a release to unknown claims in the absence of a showing, apart from the words of the release of an intent to include such claims." (*Casey* v. *Procter* (1963) 59 Cal.2d 97, 109 [28 Cal.Rptr. 307, 378 P.2d 579].) It is a question of fact whether the releaser intended to discharge a claim. (*Id.,* at p. 110.)

There was substantial evidence from which the trial court could have found that, although she knew of the existence of the pension at the time

---

[5]That release, contained in paragraph 3(a) of the property settlement agreement, provides: "Except as otherwise provided in this agreement, each party to this agreement does hereby release the other from any and all liabilities, debts or obligations of every kind or character heretofore or hereafter incurred and from any and all claims and demands including all claims of either party upon the other for support and maintenance as husband or as wife; it being understood that this agreement is intended to settle the rights of the parties hereto in all respects."

she signed the property agreement, the wife did not believe she possessed a present claim to her community interest in the pension. From this evidence the court reasonably could have concluded that the release was not intended to bar this subsequent action over the pension.

## IV.

At trial husband asserted the equitable defense of laches to wife's claim, arguing that wife's delay of over 12 years in making any claim should bar her belated effort to claim some of the pension benefits.

An action to divide an omitted asset is an action in equity. (*Hill* v. *Hattrem* (1981) 117 Cal.App.3d 569, 574 [172 Cal.Rptr. 806].) It does not seek to modify or reopen the previous final judgment of dissolution. (*Casas* v. *Thompson* (1986) 42 Cal.3d 131, fn. 4 at pp. 141-142 [228 Cal.Rptr. 33, 720 P.2d 921].) The defense of laches is, of course, available providing that it can be shown that plaintiff has acted with inexcusable delay and defendant has been thereby prejudiced. (*Wolpert* v. *Gripton* (1931) 213 Cal. 474, 483 [2 P.2d 767]; *Kleinclaus* v. *Dutard* (1905) 147 Cal. 245, 249 [81 P. 516].)

At trial wife testified that she only became aware of her interest in the pension in the "spring of 1983." In January 1984 she hired her present attorney, who filed the complaint on April 3, 1984. Husband did not become eligible to draw retirement pay until February 1, 1985, shortly after his 55th birthday.

Husband urges us to find wife's delay inexcusable by analogizing to the four-year statute of limitations applied to actions for rescission or reformation. (Code Civ. Proc., § 337.) Husband relies on two cases which he argues support his position.

The first of these cases is *In re Marriage of Wipson* (1980) 113 Cal.App.3d 136 [169 Cal.Rptr. 664]. In *Wipson*, appeal was taken from denial of a motion to set aside an interlocutory judgment on grounds of extrinsic fraud. (*Id.*, at p. 140.) The court found that the appellant had failed to establish such fraud and then cited appellant's delay in bringing the claim as an additional reason for denying her relief. (*Id.*, at pp. 141, 144.) The second case, *Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868 [191 Cal.Rptr. 619, 663 P.2d 177], likewise involved a claim alleging fraud. (*Id.*, at p. 871.) A finding that the claim was barred by the statute of limitations was upheld on appeal. In *Miller,* the wife was challenging the value assigned in the property settlement agreement to certain stock owned by the couple. (*Id.*, at p. 871.) Here, wife made no allegation that the pension was undervalued

or omitted because of fraudulent conduct by her former husband. Moreover, unlike this case, neither *Wipson* nor *Miller* was brought solely as an action to distribute a previously undistributed community property asset. Accordingly, we find no relevancy in either case to the question of whether wife here delayed unduly in bringing her action.

As to the first element of laches the trial court declined to find that wife had delayed inexcusably. Nor can we say that a delay of approximately one year from the time she first learned of her interest until she filed suit was inexcusable. It is unquestionably true that husband might have chosen to buy out wife's interest in the plan at the time of the dissolution as he testified, and thus was prejudiced by the assertion of her claim at a later date when the cash value of the pension was much greater. However, husband's pension only matured around the date of trial, thus wife was not claiming an interest in monies he had already received and possibly spent, believing them to be his separate property. (See *Henn* v. *Henn, supra,* 26 Cal.3d 323, 332-333.)

While a 12-year delay in asserting a claim is, indeed, a lengthy wait, and one which gives us some concern, yet the very nature of pensions and the substantial changes in California law as to their division have fostered such delays. As our Supreme Court has recently noted, however, the rationale for allowing recovery of such omitted assets is a policy choice which favors the equitable division of marital property over the competing concern for preserving the finality and stability of judgments. (*Casas* v. *Thompson, supra,* 42 Cal.3d 131, 141.)

The judgment is affirmed.

Kline P. J., and Benson, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 1, 1987.