493 A.2d 1382

**Leslie W. CHANEY, Appellant,**

v.

**Karen V. CHANEY, Appellee.**

Superior Court of Pennsylvania.

Argued March 18, 1985.

Filed May 31, 1985.

Robert J. Stock, Butler, for appellant.

Leo M. Stepanian, Butler, for appellee.

Before CIRILLO, HOFFMAN and ROSENWALD *, JJ.

CIRILLO, Judge:

Leslie W. Chaney appeals from the September 4, 1984 order of the Butler County Court of Common Pleas.

The parties were married on September 10, 1960, and separated on July 1, 1979; a divorce decree was granted on November 9, 1982. Appellant is employed by Armco Steel Corporation at an annual net salary of $30,000.00; Armco provides him with life insurance, various medical benefits, a pension plan, and paid holidays. In addition, Armco awarded appellant a $10,000.00 prize for a suggestion appellant made on improving company efficiency; this award was announced before the parties separated, but paid out afterwards.

By contrast, appellee was a homemaker from the birth of the parties' first child in 1962 until the separation. She is now employed as a practical nurse at a church home, at an annual net salary of $7,000.00; the home provides no fringe benefits. Appellee can work only part-time because of her affliction with multiple sclerosis; it is unlikely that she will be able to find more profitable, full-time employment. She also has custody of the parties' two minor children; two other children are now adults.

The master awarded alimony of $450.00 per month, and support of $150.00 per month for each of the two minor children. He stated that alimony would terminate upon appellee's death, remarriage or cohabitation with another man, or be altered upon a showing of changed circumstances, but did not specify that the award would terminate upon appellant's death. To the contrary, the master directed appellant to designate appellee as the beneficiary of appellant's group term life insurance policy from Armco, in order to provide some security for appellee in the event that appellant predecease her without her remarriage or cohabitation. The master then stated that this direction was not

---

* Judge Edward Rosenwald, Senior Judge, of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

meant to eliminate the obligation on appellant's estate to pay alimony to appellee. The master awarded appellee two-thirds of the marital assets, and appellant one-third. He recommended that appellant pay four-fifths of appellee's counsel fees and two-thirds of the master's fees. Finally, the master distributed the $10,000.00 Armco prize, without adjustments for income taxes, and required appellant to pay appellee $1,000.00 for repairs to the marital home.

■ Appellant excepted to the master's report, challenging, in part, the duration of the alimony award, the disposition of the Armco life insurance policy, the division of the marital property, including the Armco prize, the award of fees, and the $1,000.00 assessment against appellant for home repairs. The court sustained only the exceptions which disputed the distribution of the Armco prize and the home repairs assessment. It eliminated the $1,000.00 payment for home repairs, stating that cancelling this payment would rectify the master's error in distributing the prize money without having made an adjustment for revenue charges.

Appellant now presents five questions [1]:

1) May a spouse or his estate be required to provide for the payment of alimony after the death of the obligated spouse, where there has been no prior agreement to pay such alimony?

2) May a court order retention of a spouse as the beneficiary of a term life insurance policy furnished by the insured spouse's employer and over which the insured spouse has no control?

1. In her brief, appellee raises separate, additional claims that the courts must decide all issues under the 1980 Divorce Code, *see infra,* by the abuse-of-discretion standard and that the hearing court in this case erred in reducing appellant's pension to its present value. In the hearing court's Memorandum Opinion and Order, it does not appear that appellee raised these matters as objections to the master's report nor filed exceptions thereto; these issues are therefore waived. *See Levy v. Capital Cities Communications, Inc.,* 289 Pa.Super. 422, 433 A.2d 522 (1981); *Shuda v. Shuda,* 283 Pa.Super. 253, 423 A.2d 1242 (1980); *Brown v. Brown,* 281 Pa.Super. 283, 422 A.2d 170 (1980).

3) Does a court abuse its discretion when it assesses approximately four-fifths of a spouse's counsel fees against the other spouse, where it also awards the first spouse approximately two-thirds of the marital property?

4) Does a court abuse its discretion when it assesses two-thirds of the master's fees against a spouse, where it also awards two-thirds of the marital assets to the other spouse?

5) Does a court abuse its discretion or err in law when it assesses $1,000.00 against a spouse for repairs to the marital home, incurred during the time the other spouse resided there after the separation, when during that separation the obligated spouse paid court-ordered support without default?

■ The court decides matters of alimony, equitable distribution and assessment of fees in its discretion; we do not disturb its decisions on these issues unless it plainly abused that discretion. *Vajda v. Vajda*, 337 Pa.Super. 573, 487 A.2d 409 (1985); *Pangallo v. Pangallo*, 329 Pa.Super. 25, 477 A.2d 885 (1984); *Hess v. Hess*, 327 Pa.Super. 279, 475 A.2d 796 (1984); *Eck v. Eck*, 327 Pa.Super. 334, 475 A.2d 825 (1984); *Kleinfelter v. Kleinfelter*, 317 Pa.Super. 282, 463 A.2d 1196 (1983); *Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983); *Remick v. Remick*, 310 Pa.Super. 23, 456 A.2d 163 (1983).

■ The general rule is that an alimony obligation ceases with the obligated party's death, absent a contrary statute or agreement by the parties. *See, e.g., Hilton v. McNitt*, 49 Cal.2d 79, 315 P.2d 1 (1957); *Plant v. Plant*, 320 So.2d 455 (Fla.Dist.Ct.App.1975), *cert. dis'd*, 341 So.2d 292 (Fla.1976); *Gordon v. Gordon*, 335 So.2d 321 (Fla.Dist.Ct.App.1976); *Simpson v. Simpson*, 18 Md.App. 626, 308 A.2d 410 (1973); *Flicker v. Chenitz*, 55 N.J.Super. 273, 150 A.2d 688 (1959); *Modell v. Modell*, 23 N.J.Super. 60, 92 A.2d 505 (1952); *Perry v. Perry*, 84 App.Div.2d 612, 444 N.Y.S.2d 490 (1981); *Ehrler v. Ehrler*, 69 Misc.2d 234, 328 N.Y.S.2d 728 (Sup.Ct. 1972); *White v. White*, 48 Ohio App.2d 72, 355 N.E.2d 816 (1975). *But see Cross v. Cross*, 5 Ill.2d 456, 125 N.E.2d 488

(1955) (the court has authority to extend alimony payments past the obliged spouse's death).

In Pennsylvania, the Divorce Law of 1929[2] allowed permanent alimony only in the case of an insane spouse; the court could order alimony for the support of such a spouse for the duration of his or her life. 23 P.S. § 45 (repealed). Permanent alimony was thus purely a creature of statute. *Hooks v. Hooks,* 123 Pa.Super. 507, 187 A. 245 (1936). Alimony pendente lite, under Section 46 of the 1929 Code, was similarly a statutory right, *Meinel v. Meinel,* 109 Pa.Super. 159, 167 A. 385 (1933), and was awarded in order to enable the dependent spouse to bring or to defend the divorce action, *Young v. Young,* 274 Pa.Super. 298, 418 A.2d 415 (1980). Alimony was also awarded under Section 47 of the 1929 Code in divorces "from bed and board," because such divorces were merely judicial separations and did not terminate the obligated spouse's duty of support. *Commissioner v. Rankin,* 270 F.2d 160 (3d Cir.1959); *Commonwealth ex rel. Rubin v. Rubin,* 230 Pa.Super. 591, 326 A.2d 578 (1974).

Except in the case of an insane spouse, the duty of support, hence the court's power to award alimony, ended under the 1929 Code with the entry of a valid decree of absolute divorce. *Rankin, supra; In re Mathay's Estate,* 463 Pa. 486, 345 A.2d 623 (1975); *Stambaugh v. Stambaugh,* 458 Pa. 147, 329 A.2d 483 (1974); *Commonwealth ex rel. Platt v. Platt,* 227 Pa.Super. 423, 323 A.2d 29 (1974); *Commonwealth ex rel. Lorusso v. Lorusso,* 189 Pa.Super. 403, 150 A.2d 370 (1959) (allocatur denied). A husband could agree to provide for payments to his former wife to continue past his death, but the law ensured that a former spouse receiving alimony could not normally have a greater right to support from the obligated spouse than if the parties had remained married and the obligated spouse died. *Estate of Edwin A. Watrous,* 95 Pa.Super. 11 (1928). *Compare Commonwealth ex rel. Buehler v. Buehler,* 288 Pa.

**2.** Act of May 2, 1929, P.L. 1237, *as amended* 23 P.S. §§ 1–69 (repealed 1980) (hereinafter cited and referred to as the "1929 Code").

Super. 303, 431 A.2d 1059 (1981) (wife may not use support action to secure a share of her husband's estate); *Commonwealth ex rel. Simpson v. Simpson,* 287 Pa.Super. 356, 430 A.2d 323 (1981) (same); *Commonwealth ex rel. Roviello v. Roviello,* 229 Pa.Super. 428, 323 A.2d 766 (1974) (same).

In 1980, the Pennsylvania Legislature enacted our present, reformed Divorce Code.[3] The 1980 Code was intended in part to modernize Pennsylvania's domestic relations law and to harmonize it with the law of other states. *See generally* Gold-Bikin and Rounick, "The New Pennsylvania Divorce Code," 25 Vill.L.Rev. 617 (1980); Comment, "Divorce Reform: Pennsylvania Attempts To Break With the Past," 18 Duq.L.Rev. 877 (1980). Three of the 1980 Code's policies, stated in Section 102, are to:

(a) ...

. . . .

(3) Give primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of marital wrongs.

(4) Mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage.

. . . .

(6) Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

23 P.S. § 102(a)(3), (4), (6). The 1980 Code thus suggests at the outset that, unlike its predecessor, it will allow alimony even after the termination of the marriage, subject to the terms and limitations of its particular sections.

Alimony is governed by Section 501 of the 1980 Code, which lists the factors the court must consider in fixing alimony. *See* 23 P.S. § 501(a), (b); *Hess v. Hess, supra* (reviewing Section 501 and the master's and court's duties to apply its criteria). Section 501 also provides:

---

**3.** Act of April 2, 1980, P.L. 63, No. 26, *as amended* 23 P.S. §§ 101–801 (hereinafter cited and referred to as the "1980 Code").

(c) Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment, *the court* in ordering alimony *shall limit the duration of the order to a period of time which is reasonable* for the purpose of allowing the party seeking alimony to meet his or her *reasonable needs* by:

    (1) *obtaining appropriate employment;* or

    (2) *developing an appropriate employable skill.*

. . . .

(e) Any order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon such order may be modified, suspended, terminated, reinstituted, or a new order made. Any such further order shall apply only to payment accruing subsequent to the petition for the requested relief. *Remarriage of the party receiving alimony shall terminate the award of alimony.*

23 P.S. § 501(c), (e) (emphasis added). Section 502 authorizes awards of alimony pendente lite, upon consideration of all relevant financial factors, *Cross v. Cross*, 310 Pa.Super. 124, 456 A.2d 214 (1983), and Section 507 relieves a spouse from any obligation to pay alimony if the recipient spouse "enter[s] into cohabitation with a person of the opposite sex who is not a member of [the recipient's] immediate family within the degrees of consanguinity subsequent to the divorce." 23 P.S. § 507.

The 1980 Code mentions the death of a spouse only in Section 701, "Marriage upon false rumor of spouse's death." If the first spouse obtains a valid divorce decree or does in fact die, then the other spouse's new marriage, entered in reliance on the rumor, is valid as of the date of that decree or death. 23 P.S. § 701(d).

Thus, the 1980 Code does not specifically empower the master or the court to award alimony to continue beyond

the obligated party's demise. Rather, the Code states several events which will terminate an alimony obligation: remarriage, cohabitation, and the recipient spouse's development of an employable skill or commencement of suitable employment. The Code envisions that alimony will be based on the parties' respective needs and abilities to pay, in order to "effectuate economic justice," and that it will terminate within a "reasonable" time after the entry of the divorce decree, unless the spouse receiving alimony cannot become self-sufficient. *Compare Eck v. Eck, supra* (wife's voluntary decision to care for elderly, disabled mother and not to pursue education or training for employment did not preclude alimony award); *D'Arciprete v. D'Arciprete*, 323 Pa.Super. 430, 470 A.2d 995 (1984) (in support action, court properly considers any limitations upon petitioner's earning properly considers any limitations upon petitioner's earning capacity).

■ After reviewing the policies and provisions of the 1980 Code, we find that the Code does not authorize the award of alimony to extend past the payor's death, unless the parties have voluntarily agreed otherwise. *See* 23 P.S. § 501(f) (court may approve alimony agreement, which then is deemed the order of the court and enforced accordingly).

■ The trial court therefore abused its discretion by upholding the master's award to appellee of alimony, to the extent that that award purported to bind appellant's estate after his death.

Appellant next inquires whether the court could require him to designate appellee as the beneficiary of a term life insurance policy provided by his employer.

The courts are divided on the question of whether a party in a divorce action may be required to name or to maintain his or her spouse as the beneficiary of an insurance policy. Some hold that insurance is in the nature of alimony continuing past the insured's death, and so cannot be ordered absent statutory authorization. *See, e.g., Slaton v. Slaton,* 428 So.2d 347 (Fla.Dist.Ct.App.1983); *Bildner v. Bildner,*

219 So.2d 749 (Fla.Dist.Ct.App.1969); *Gordon v. Gordon,* 71 App.Div.2d 911, 419 N.Y.S.2d 749 (1979); *Enos v. Enos,* 41 App.Div.2d 642, 340 N.Y.S.2d 783 (1973). *But see Brandenburg v. Brandenburg,* 425 So.2d 25 (Fla.Dist.Ct.App. 1982) (error to direct husband to designate wife as beneficiary of policy not in record; husband agreed to make wife irrevocable beneficiary of policy in record). Others allow insurance requirements, under various theories. *See, e.g., Re Marriage of Koktavy,* 44 Colo.App. 305, 612 P.2d 1161 (1980) (court empowered by statute and power validly exercised given husband's poor health); *Appelman v. Appelman,* 87 Ill.App.3d 749, 43 Ill.Dec. 199, 410 N.E.2d 199 (1980) (clause in settlement agreement requiring husband to maintain wife as beneficiary presumably a negotiated term); *Arundel v. Arundel,* 281 N.W.2d 663 (Minn.1979) (requirement valid if wife unable to support herself); *Davis v. Davis,* 184 N.J.Super. 430, 446 A.2d 540 (1982) (same); *McBean v. McBean,* 371 S.W.2d 930 (Tex.Civ.App.1963) (insurance policy refers to a property interest); *Williams v. Williams,* 44 Wis.2d 651, 171 N.W.2d 902 (1969) (requirement not an abuse of court's discretion where property division and alimony are sufficient); *see also* Walzer, "The Disposition of Life Insurance in Divorce Settlements," 2 Family L.Q. 1 (1968).

Equitable distribution is governed by Chapter 4 of the 1980 Code. *See generally* Comment, "The Pennsylvania Reformed Divorce Code: Equitable Distribution of Marital Property," 22 Duq.L.Rev. 151 (1983); Note, "Application of the Equitable Distribution Provisions of Pennsylvania's 1980 Divorce Code To Marital Property Acquired Both Before and After the Effective Date of Code Held Constitutional," 56 Temp.L.Q. 855 (1983). Section 401 states, in pertinent part, that "[t]he court may also direct the continued maintenance and beneficiary designation of existing policies insuring the life of either party. The court's power under this subsection shall extend only to policies originally purchased during the marriage and owned by or within the effective control of either party." 23 P.S. § 401(i).

■ In the present case, the master did find, as appellee contends, that appellant acquired "a" life insurance policy during the marriage, and that he cashed in this policy after the separation. However, the record reveals that appellant acquired the disputed Armco group policy on October 7, 1959, the date his employment with Armco commenced; this was before the parties' 1960 marriage. Therefore, under Section 401(i) the court could not order appellant to designate appellee as the beneficiary of the Armco policy. *Compare Estep v. Estep*, 326 Pa.Super. 404, 474 A.2d 302 (1984) (trial court did not abuse its discretion in finding insurance policies not subject to equitable distribution, where policies had small surrender values and had been acquired substantially before the marriage).

Regarding appellant's third and fourth contentions, appellant does not challenge the amount of the master's or counsel's fee, nor the court's division of the marital property. Appellant questions only the court's award of those fees in relation to its proportionate division of the marital property.

The courts generally may make fee awards, even prospective awards, under a statute or court rule, in order to enable a party to bring or to defend a divorce action. *See Davidson v. Davidson*, 5 Cal.App.3d 51, 84 Cal.Rptr. 884 (1970); *R. v. R.*, 310 A.2d 877 (Del.Super.1973); *Gary v. Gary*, 237 So.2d 575 (Fla.Dist.Ct.App.1970); *Bowman v. Bowman*, 242 Ga. 259, 248 S.E.2d 654 (1978); *Svetich v. Svetich*, 425 N.E.2d 191 (Ind.App.1981); *Bechtel v. Bechtel*, 33 Mich. App. 506, 190 N.W.2d 248 (1971); *Kaplan v. Kaplan*, 69 Misc.2d 198, 329 N.Y.S.2d 750 (N.Y.Sup.Ct.1972). *But see Re Marriage of Justema*, 95 Ill.App.3d 483, 51 Ill.Dec. 382, 420 N.E.2d 796 (1981) (statute required that fee already have been incurred before court could make award).

Pennsylvania's 1929 Code did not specifically prescribe the master's compensation; instead, the court had reviewable discretion under Section 36 to award an amount for his fee. *Merlin v. Merlin*, 203 Pa.Super. 16, 198 A.2d 362 (1964). Section 46 allowed awards of counsel fees, to bal-

ance as much as possible the parties' abilities to assert and to defend their rights. *Wechsler v. Wechsler*, 242 Pa.Super. 356, 363 A.2d 1307 (1976). Fee awards are now made under Section 502 of the 1980 Code, which permits the court to award "reasonable" amounts for fees and costs in addition to alimony pendente lite. *See Hoover v. Hoover*, 288 Pa.Super. 159, 431 A.2d 337 (1981) (awards are meant to equalize the parties' economic positions in conducting the action).

■ In the instant case, appellant works for a large corporation, nets an annual salary of $30,000.00 and receives fringe benefits and paid vacation time. Appellee only recently returned to the work force, after the parties' 1979 separation; she is employed at a charitable institution, and is compensated solely by a net salary of $7,000.00. In addition, her hopes for more lucrative employment are limited by her impaired health. After reviewing the record in this case, we cannot say that the trial court abused its discretion in its award of the master's and counsel's fees, even in light of the equitable distribution of the parties' marital property. *Compare Lowenschuss v. Lowenschuss*, 327 Pa.Super. 120, 475 A.2d 127 (1984) (award of $10,000.00 interim counsel fee not an abuse of discretion).

■ In support of his final claim, appellant argues that the trial court's modification of the master's order, by excluding the latter's $1,000.00 award to appellee for home repairs, was not an adjudication that appellant did not owe appellee this amount, but rather was merely a "credit" to appellant, awarded because the master had not made a tax reduction from the Armco prize. Thus, appellant does not dispute the amount of the adjustment to the prize money, but rather the trial court's characterization of that adjustment.

■ This characterization did not do appellant any injustice. Appellant wanted a tax reduction from the prize and the elimination of the repairs assessment. He does not question the value of the reduction; the trial court's mathematical *reasoning* underlying its revision of the equitable

distribution cannot by itself constitute an abuse of discretion. We therefore may not disturb the trial court's resolution of this matter. *Vajda, Pangallo, Eck, Hess, Kleinfelter, Ruth,* and *Remick, supra.* We note, however, that appellant's claim to relief on this issue based upon his payment of court-ordered support without default is meritless: a spouse's or parent's obligation of support is separate from and independent of the court's discretion in dividing marital property.

The order of the Court of Common Pleas is reversed insofar as it requires appellant or his estate to provide for alimony payments to appellee after appellant's death and requires appellant to designate appellee as the beneficiary of his Armco insurance policy; the order is affirmed as to all other matters.

Affirmed in part; reversed in part; remanded for further proceedings not inconsistent with this opinion. Jurisdiction is relinquished.