500 A.2d 1175

**Barbara A. Schimmel CHENG, Appellant,**

v.

**Thomas C. CHENG.**

Superior Court of Pennsylvania.

Argued May 23, 1985.

Filed Nov. 15, 1985.

516

Allan C. Perry, Philadelphia, for appellant.

Glenn D. McGogney, Allentown, for appellee.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

CIRILLO, Judge:

This is an appeal from an order dismissing appellant Barbara Cheng's complaint for divorce and economic relief

for lack of subject-matter jurisdiction. We reverse and remand.

Barbara and appellee Thomas Cheng were married on May 31, 1957, in Phoenixville, Pennsylvania. They moved from Pennsylvania but returned in 1969. They separated on July 8, 1978, and Thomas relocated in South Carolina, establishing residency there in July, 1980.

On June 23, 1981, Thomas filed a complaint in divorce in South Carolina. Unable to perfect personal service on Barbara, the defendant in that action, Thomas notified her through publication. Barbara answered Thomas's South Carolina complaint and counterclaimed for equitable distribution, counsel fees and costs, and alimony. She had filed a complaint in divorce in the Northampton County Court of Common Pleas in Pennsylvania on August 19, 1981, seeking a divorce, equitable distribution, alimony, costs and expenses, and support for the parties' remaining minor child; Northampton County is where Barbara and the child reside and the former marital home is located. A master was appointed on November 18, 1981, to preside over the Pennsylvania action.

Thomas appeared through counsel in Barbara's Pennsylvania action on December 29, 1981, and filed preliminary objections, raising his prior, pending action in South Carolina as a defense. Upon Barbara's motion, Thomas's objections were stricken as having been untimely filed. Thomas then answered Barbara's complaint, denying her averment that there was no prior pending action and alleging the pendency of his own South Carolina action.

On March 19, 1982, Thomas and counsel for Barbara appeared in the South Carolina action. Barbara's counsel initially challenged Thomas's motion to sever the divorce claim therein from the economic claims raised in Barbara's counterclaim. However, counsel for both parties finally stipulated that Barbara would not oppose the motion to sever if Thomas signed and recorded, in the Northampton County court, a stipulation which would ensure that court's jurisdiction over the other collateral, economic matters.

The parties also agreed to stay the South Carolina proceedings on Barbara's counterclaim, with the South Carolina court's jurisdiction preserved, pending resolution of the economic issues in the Pennsylvania court. The South Carolina court issued a decree in divorce a.v.m. on April 20, 1982.

The master in Barbara's Pennsylvania action held a hearing on the economic claims on April 13, 1983. Barbara, her counsel, and counsel for Thomas attended. The master found that Barbara's claim for post-divorce alimony was both well-founded and viable under Pennsylvania law. However, the master recommended that alimony be denied because Pennsylvania lacked subject-matter jurisdiction over Barbara's divorce action. The Northampton County court agreed, denying Barbara's exceptions to the master's report and dismissing her complaint.

Appellant Barbara now claims:

1) that the trial court erred in holding that it lacked jurisdiction to grant post-divorce alimony in the instant case because of the decision in *Sohmer v. Sohmer*, 318 Pa.Super. 500, 465 A.2d 665 (1983);

2) that the trial court erred in questioning whether appellee Thomas's prior pending action vitiated Pennsylvania's jurisdiction over the subject matter when, in fact, that specific issue had been raised in Thomas's preliminary objections, which were dismissed as untimely;

3) that the trial court erred in concluding that, although the case at bar is factually distinguishable from *Sohmer v. Sohmer, supra*, those distinctions are not material; and

4) that the holding of *Sohmer v. Sohmer* directly conflicts with the legislative findings and intent expressed in the Divorce Code of 1980 and with the Commonwealth's long-standing public policy on the sanctity of marriage.

We find appellant's second contention to be of no consequence. The court shall dismiss an action *whenever* it appears by suggestion of the parties *or otherwise* that the court lacks subject-matter jurisdiction. Pa.R.Civ.P. 1032(2).

That appellee's objection to appellant's complaint on this basis was dismissed as untimely is irrelevant. Likewise, as will be discussed below, we do not find our previous decision in *Sohmer v. Sohmer* to be contrary to the intent of the Divorce Code or the policy of this Commonwealth. However, we agree with appellant's first and third contentions, and therefore reverse the instant order and remand.

█ Both parties, as did the trial court, frame the key issue herein as one of jurisdiction. The test of subject-matter jurisdiction is simply whether the court is competent or has the power to hear and determine controversies of the general class at issue, not whether the court might ultimately decide that it cannot grant relief in the particular case before it. *In re Jones & Laughlin Steel Corp.*, 488 Pa. 524, 412 A.2d 1099 (1980); *McWilliams v. McCabe*, 406 Pa. 644, 179 A.2d 222 (1962); *Witney v. City of Lebanon*, 369 Pa. 308, 85 A.2d 106 (1952); *Alpha Tau Omega Fraternity v. University of Pennsylvania*, 318 Pa.Super. 293, 464 A.2d 1349 (1983); *Nagle v. American Casualty Co.*, 317 Pa.Super. 164, 463 A.2d 1136 (1983); *Rose v. Wissinger*, 294 Pa.Super. 265, 439 A.2d 1193 (1982). Parties to an action cannot, by stipulation, for example, confer jurisdiction upon a court for which jurisdiction would otherwise be lacking. *T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 372 A.2d 721 (1977); *Maxton v. Philadelphia Housing Authority*, 308 Pa.Super. 444, 454 A.2d 618 (1982); *see also Foote v. Maryland Casualty Co.*, 409 Pa. 307, 186 A.2d 255 (1962); *Foley Brothers, Inc. v. Commonwealth, Department of Highways*, 400 Pa. 584, 163 A.2d 80 (1960); *Stinner v. Stinner*, 300 Pa.Super. 351, 446 A.2d 651 (1982); *Zvonik v. Zvonik*, 291 Pa.Super. 309, 435 A.2d 1236 (1981); *Kardibin v. Associated Hardware*, 284 Pa.Super. 586, 426 A.2d 649 (1981); *Marmara v. Rawle*, 264 Pa.Super. 229, 399 A.2d 750 (1979); *Chamberlin of Pittsburgh, Inc. v. Fort Pitt Chemical Co.*, 237 Pa.Super. 528, 352 A.2d 176 (1975) (allocatur denied). For reasons which we will elaborate upon later, we find that the Northampton County court had jurisdiction over the instant action. Thus, the basic question presented may be

analogized to one of choosing the court of the more appropriate or convenient *venue:* here, Pennsylvania or South Carolina. Phrased in this manner, Pennsylvania is the proper forum for the instant litigation.

The Divorce Code of 1980, 23 P.S. §§ 101–801 (1980 Code), was enacted to modernize Pennsylvania's domestic relations law and to harmonize it with the laws of other states. *Chaney v. Chaney,* 343 Pa.Super. 77, 84, 493 A.2d 1382, 1386 (1985) (Opinion by Cirillo, J.). One of the policies of the 1980 Code is to:

(a) ...

....

(6) *Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony* according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

(b) The objectives set forth in subsection (a) shall be considered in construing provisions of this act and shall be regarded as expressing the legislative intent.

23 P.S. § 102(a)(6), (b) (emphasis supplied). Clearly, the 1980 Code permits post-divorce alimony in appropriate situations. *Chaney, supra,* 343 Pa.Superior Ct. at 84, 493 A.2d at 1386.

To apply this policy, the 1980 Code grants the courts of this Commonwealth broad jurisdiction.

(a) The courts of this Commonwealth ... shall have original jurisdiction in cases of divorce ... and, where they have jurisdiction, shall determine in conjunction with any decree granting a divorce or annulment the following matters, where raised in the complaint or the answer and issue appropriate decrees or orders with reference thereto and may retain continuing jurisdiction thereof:

(1) ... the order of any alimony....

23 P.S. § 301(a)(1). Specifically, the Code provides:

In all matrimonial causes, the court shall have *full equity power and jurisdiction* and may issue injunctions or

other orders which are *necessary to protect the interests of the parties or to effectuate the purposes of this act,* and may grant such other relief or remedy as equity and justice require....

23 P.S. § 401(c) (emphasis supplied).

The Pennsylvania Legislature has also spoken on the availability of alimony after an ex parte divorce:

### § 505. Alimony where a foreign ex parte divorce or annulment

Whenever a person who was a resident of this Commonwealth at the time such person was a defendant or respondent in a foreign ex parte action for annulment or divorce petitions a court of this Commonwealth *for alimony* and establishes the need therefor, such court, *if it has jurisdiction over the person or property* of the other party, may order that such alimony be paid in the same manner and under the same conditions and limitations which pertain when alimony is sought as provided in this chapter. In the event that the other party from whom such alimony is sought cannot be located within this Commonwealth, the court may attach such of the tangible or intangible property of said party as is within the jurisdiction of the court in the manner provided by the Rules of Civil Procedure, except that no exemption shall apply. Such property shall thereupon be subject to the payment of alimony in the same manner as provided by law in actions for nonsupport.

23 P.S. § 505 (emphasis supplied).

■ "[I]ndividual provisions in a comprehensive legislative scheme ... should not be read abstractly, but rather with a view to their place in the entire structure." *Sohmer, supra,* 318 Pa.Super. at 506, 465 A.2d at 668 [1]; *see also Appeal of Yerger,* 460 Pa. 537, 333 A.2d 902 (1975). Sec-

---

**1.** With this statement, we summarily dismissed in *Sohmer v. Sohmer* the appellant's claim that the above-quoted Section 301(a) gave the court jurisdiction to hear her petition for alimony. As will be seen, the case now before us can be distinguished from *Sohmer v. Sohmer* and jurisdiction grounded in Section 401(c), a portion of the 1980 Code with which we were not there confronted.

tions 301, 401, and 505, therefore, must be analyzed within the concept of a working whole in order to ascertain the intent of the Legislature, the object of statutory construction. 1 Pa.C.S. § 1921(a). We need not speculate about that intent here, however, because the Legislature stated its policies in Section 102. Similarly, "[t]he Divorce Code of 1980 must be read in the context of the whole law and not independently of it." *Young v. Young*, 320 Pa.Super. 269, 278, 467 A.2d 33, 37 (1983), *rev'd on other grounds*, 507 Pa. 40, 488 A.2d 264 (1985) (1980 Code did not apply to divorce decree and property distribution order entered before its effective date). The 1980 Code neither creates new implied procedural devices nor relieves divorce cases from existing procedural and substantive rules. *Young, supra*, 320 Pa. Super. at 278, 467 A.2d at 37. Accordingly, Section 505 should not be read as delineating jurisdiction, the province of Sections 301 and 401, but rather as granting a specific form of relief in particular circumstances.

The 1980 Code "aims to foster economic justice," *Young, supra*, 320 Pa.Superior Ct. at 277, 467 A.2d at 37, and the language of Sections 102, 301, and 401 emphasizes this goal, as does the language of Section 505. This last section is consistent with the policy and intent of the rest of the Code in that it allows alimony in an otherwise inequitable situation. Therefore, we interpret Section 505 to give full effect to the entire Code; such an interpretation is consistent with prior law and the policy of the 1980 Code.

Our interpretation of Section 505 also upholds this state's interest in resolving the divorce actions of its domiciliaries. Where, as here, the spouses have separate domiciles, each state of domicile has an interest in the parties' marital status. *See* Restatement (Second) of Conflict of Laws § 71 (1971). Each state will apply its own law, in actions brought there, to determine its domiciliary's right to a divorce. *Id.* at § 285. The doctrine of divisible divorce recognizes these principles by allowing the more interested forum to adjudicate the varied rights of its domiciliaries. *Estin v. Estin*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561

(1948); *Stambaugh v. Stambaugh*, 458 Pa. 147, 329 A.2d 483 (1974).

In the instant case, both parties rely, as did the trial court, on *Sohmer v. Sohmer*'s interpretation of Section 505 as dispositive of the question presented. The appellant in *Sohmer* filed for a divorce in Pennsylvania. Her husband then filed in Virginia, and the appellant appeared through counsel in that action. The Virginia court granted a divorce a.v.m., but left open the question of alimony. We denied the appellant's claim for post-divorce alimony, holding that the doctrine of divisible divorce does not apply where a party has appeared in the foreign proceeding. *Sohmer, supra*, 318 Pa.Super. at 507, 465 A.2d at 668. Thus, we found Pennsylvania to be without jurisdiction to grant relief after the entry of a foreign divorce decree which was not ex parte. *Id.*

Appellee Thomas now argues that *Sohmer v. Sohmer* bars appellant Barbara's claims, because she appeared through counsel in the South Carolina divorce proceeding. However, our reading of Section 505 in *Sohmer v. Sohmer* can be harmonized with Sections 301 and 401, given the facts of the instant case. Accordingly, we will interpret Section 505 to allow appellant Barbara Cheng to seek post-divorce relief. We reach that conclusion in order to promote the policies of the 1980 Code and to acknowledge the compelling factual distinctions between *Sohmer v. Sohmer* and the case now before us.

The decree in *Sohmer v. Sohmer* was not specific, nor was it conditioned upon stipulations by the parties; rather, it left open the question of alimony. The decree seemingly preserved jurisdiction as an after-thought, speaking generally of "this or any other Court" empowered to "adjudicate the property rights of the parties in this or any other jurisdiction." *Id.*, 318 Pa.Superior Ct. at 503 n. 1, 465 A.2d at 666 n. 1. In addition, the parties and the court in *Sohmer* did not choose or rely on a specific state to determine the ancillary matters. More importantly, the appellant in *Sohmer* first sought post-divorce alimony in Penn-

sylvania after she and her husband had been divorced in Virginia; unlike Barbara Cheng herein, the appellant in that case did not request alimony in her original petition for divorce.

By contrast, the South Carolina court in the present case specifically conditioned its issuance of a divorce decree on the parties' agreement to resolve their economic and property disputes in Pennsylvania. Second, appellee Thomas filed a stipulation, in the Northampton County court, which provided that all ancillary matters were reserved for that court's determination. In that stipulation, a condition precedent to the divorce decree, Thomas consented to the Pennsylvania court's resolution of these matters; the South Carolina court had expressly stated that its decree was not final on alimony or any other economic or property issue. The decree clearly noted that Barbara's objections to Thomas's motion to sever would be withdrawn if Thomas agreed to Pennsylvania's jurisdiction over the collateral economic matters to be resolved between the parties. The decree was, therefore, obviously not a final determination of the economic and property issues; it spoke instead only on the question of the divorce itself. Full faith and credit requires us to recognize and enforce the South Carolina decree insofar as it grants the parties a divorce, which indeed is all that that decree purports to do. *See Estin v. Estin, supra; Stambaugh v. Stambaugh, supra;* Restatement (Second), *supra* at § 107.[2]

2. The United States Constitution requires each state to give full faith and credit to the final adjudications of every other state. U.S. Const. art. IV, § 1; *see also Schifano v. Schifano,* 324 Pa.Super. 281, 293-94, 471 A.2d 839, 845 (1984). In Pennsylvania, a foreign decree is generally given the same effect which it would have in the issuing state. *Morris Lapidus Associates v. Airportels, Inc.,* 240 Pa.Super. 80, 82-83, 361 A.2d 660, 662 (1976) (allocatur denied). A sister state's divorce decree is presumptively valid in this jurisdiction. *Watson v. Watson,* 243 Pa.Super. 23, 28, 364 A.2d 431, 433 (1976) (allocatur denied). However, a foreign decree will not necessarily be dispositive of the economic aspects of the divorce, *Sohmer, supra,* 318 Pa.Super. at 504, 465 A.2d at 667; these questions are left for determination in other proper jurisdictions. *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 77

In addition, the parties' stipulations did not confer jurisdiction on a Pennsylvania court which would otherwise not exist. *Compare Sohmer, supra*, 318 Pa.Superior Ct. at 505, 465 A.2d at 667 (decree issued by another state's court cannot create jurisdiction in Pennsylvania). Instead, this Commonwealth has jurisdiction because significant marital property is located here: Barbara has made several claims regarding the settlement of various economic and property matters, whereas the appellant in *Sohmer v. Sohmer* had apparently petitioned for alimony only. *See Sohmer, supra*, 318 Pa.Superior Ct. at 505, 465 A.2d at 666. As is suggested in Section 505 itself, property is a sufficient basis for a finding of jurisdiction.

For this reason, the South Carolina court properly refused to decide any financial or property issues, because property matters in a divorce case are within the jurisdiction of the state where that property is located. We have already had occasion to examine this aspect of dual-state divorces, in *Taddei v. Taddei*, 299 Pa.Super. 318, 445 A.2d 773 (1982), a case far more applicable to the one at bar than is *Sohmer v. Sohmer*.

In *Taddei*, the parties received a divorce decree from a New Jersey court. The petitioner in that action then brought suit in a Pennsylvania court for partition of the marital property and for accountings of that property. The respondent answered and counterclaimed for sole ownership of the former marital home, equitable distribution of other marital property, support and alimony. This counterclaim was dismissed with prejudice. Although the major issue in *Taddei* was the retroactive application of the 1980 Code, we stated that a court cannot exercise jurisdiction over property outside its own state. *Id.*, 299 Pa.Superior Ct. at 322, 445 A.2d at 775. For this reason, either of the parties could bring an action in a Pennsylvania court to settle their property rights. *Id.* In particular, we held that "here, the New Jersey court did not, and indeed could not, make any

S.Ct. 1360, 1 L.Ed.2d 1456 (1957); *Estin v. Estin, supra; Sohmer v. Sohmer, supra.*

property distribution because it lacked jurisdiction. [Rather,] Pennsylvania [is] the only forum with jurisdiction over the subject property." *Id.*, 299 Pa.Superior Ct. at 325, 445 A.2d at 777.

Furthermore, regarding Section 505's language on ex parte proceedings, in addition to the distinctions between this case and *Sohmer v. Sohmer,* the present facts clearly illustrate the inequity which would result from our assertion that the South Carolina proceeding in this case was not ex parte because Barbara appeared there through counsel.

■ A judicial proceeding is "ex parte" if one party applies to the court for and is awarded relief without the presence or even the knowledge of the other party, who may be affected or bound by the proceeding without having had his or her constitutionally protected opportunity to appear and be heard. *See Gliwa v. United States Steel Corp.,* 322 Pa. 225, 227, 185 A. 584, 585 (1936); *Powell v. Sonntag,* 159 Pa.Super. 354, 361, 48 A.2d 62, 65–66 (1946); *see also United States v. Meriwether,* 486 F.2d 498 (5th Cir.1973), *cert. denied,* 417 U.S. 948, 94 S.Ct. 3074, 41 L.Ed.2d 668 (1974); *White v. State,* 457 P.2d 650 (Alaska 1969); *Wilson-Jump Co. v. McCarthy-Hundrieser and Associates, Inc.,* 85 Ill.App.3d 179, 40 Ill.Dec. 230, 405 N.E.2d 1322 (1980); *Kutrules v. Suchomel,* 258 Iowa 1206, 141 N.W.2d 593 (1966); *In re Will of Bowlus,* 197 Kan. 351, 416 P.2d 711 (1966); *Rodgers v. Unborn Child or Children of Rodgers,* 204 Tenn. 96, 315 S.W.2d 521 (1958).

For appellant Barbara Cheng, the South Carolina divorce proceeding was essentially ex parte, in operation if not in form. Although she "appeared" in that proceeding, she had no real opportunity to have her claims fully and finally litigated there because that court specifically said that it would not—in part because it could not—decide the economic and property issues which she had raised. She has yet to litigate any such claims, and cannot fairly be said to have had an opportunity to be heard in another forum, where that forum expressly and correctly declined to hear and decide them.

■ Finally, jurisdiction in this case is founded not only upon the location of marital property in Pennsylvania but also upon the mandate of Section 401(c), quoted *supra*. That provision does not limit our courts to awarding pendente lite remedies, but is meant to fulfill the policies of the 1980 Code, including the doing of economic justice between divorced parties, as stated in Section 102(a)(6). *Lehmicke v. Lehmicke*, 339 Pa.Super. 559, 564–65, 489 A.2d 782, 785–86 (1985), citing Jack A. Rounick, *Pennsylvania Matrimonial Practice* § 18:6 (1982) (Section 401(c) is "the most far-reaching power heretofore given to a court in a matrimonial cause to protect the interests of the parties and to effectuate the purposes of the New Divorce Code"). *Compare Young v. Young, supra* (courts are to exercise their Section 401(c) powers to achieve the goal of Section 102(a)(6)); *Lazovitz v. Lazovitz*, 307 Pa.Super. 341, 453 A.2d 615 (1982) (same); *see also Krenzelak v. Krenzelak*, 503 Pa. 373, 469 A.2d 987 (1983); *Flynn v. Flynn*, 341 Pa.Super. 76, 491 A.2d 156 (1985); *Hodge v. Hodge*, 337 Pa.Super. 151, 486 A.2d 951 (1984); *Beamer v. Beamer*, 330 Pa.Super. 154, 479 A.2d 485 (1984); *Semasek v. Semasek*, 331 Pa.Super. 1, 479 A.2d 1047 (1984). Given appellant's inability to have her claims determined by the South Carolina court, because of both that court's lack of jurisdiction over the Pennsylvania property and the deliberately limited nature of its decree, we will exercise our authority under Section 401(c) to permit her to seek appropriate economic relief in this Commonwealth.

In conclusion, while both the South Carolina and Pennsylvania courts had jurisdiction for purposes of granting a divorce to the parties in the instant case, the Northampton County court had the jurisdiction enabling it to decide property matters between the parties, where the property at issue is located in this state. Likewise, the court was empowered by Section 401(c) to hear appellant's arguments for economic relief. The trial court thus erred in ruling

that it lacked jurisdiction to entertain appellant's complaint.[3] Its order dismissing that complaint is therefore reversed and remanded with instructions to proceed in light of our holding herein.

Order reversed; remanded for further proceedings consistent with this opinion; jurisdiction is relinquished.

---

**3.** Of course, to the extent that appellant's complaint sought a divorce in addition to the economic relief, that issue is moot.