## Line v. Line

*Joel Cardis*, for plaintiff.
*Douglas A. Gifford,* for defendant.

BRODY, *J.,* October 21, 1986—The question before the court is whether a Pennsylvania court should entertain the economic claims after a sister state has granted an ex parte divorce. This memorandum opinion is written with my order in consideration of: (1) Helen Line's complaint in divorce requesting resolution of economic matters in Pennsylvania, (2) John Line's preliminary objections to the divorce complaint, (3) John Line's petition for the partition of jointly owned real estate, and (4) John Line's petition to vacate the order for support.

### PROCEDURAL HISTORY

In November 1984, John Line filed a complaint in divorce in the state of Nevada against his wife, Helen Line a Pennsylvania resident. On January 16, 1985, wife filed an action for support in Montgomery County, Pa. A support order was entered on May 10, 1985, effective date January 16, 1985. With husband's Nevada divorce complaint still pending, on February 1, 1985, wife filed for divorce in Montgomery County, raising economic issues for the first

time. She requested equitable distribution of marital property, alimony pendente lite, counsel fees, costs and expenses and alimony.

A Nevada court issued a divorce on March 13, 1985, without an appearance by wife or her counsel. No request was made for the distribution of marital property in the foreign ex parte proceeding.

In October 1985, husband filed a petition to vacate the support order.

In November 1985, husband filed a petition in Montgomery County, Pa. for partition of the parties' jointly owned real estate. Wife filed preliminary objections to the partition action, claiming that her prior pending Pennsylvania divorce action requesting equitable distribution barred the partition action. In January 1986, husband raised preliminary objections to the Pennsylvania divorce complaint. The preliminary objections in partition, preliminary objections to the complaint in divorce and the de novo hearing in support[1] were consolidated and heard by me on April 3, 1986.

The parties stipulated that the Nevada divorce was ex parte. By stating that Pennsylvania would be a proper state to decide post-divorce alimony the parties have stipulated the Pennsylvania would have personal jurisdiction over Mr. Line to adjudicate economic issues.

## DISCUSSION

### Economic Claims

The Nevada divorce proceeding resulted in a classic foreign, exparte divorce decree. There is no issue regarding the validity of the foreign decree,[2] nor is

1. An order will be issued on the petition to vacate support, but will not be covered in the discussion.

2. The Nevada decree is presumptively valid and given full faith and credit in Pennsylvania with respect to the marital

the ex parte nature of the foreign proceeding disputed. Therefore, Helen Line is clearly able to raise her post-divorce claim for alimony in Pennsylvania under section 505 of the Divorce Code of 1980, 23 P.S. §§101-801.[3]

The crucial question before me is whether a Pennsylvania court can now hear Helen Line's request for equitable distribution and other economic relief in addition to her claim for alimony.

Equitable distribution and alimony are the bedrock upon which the 1980 Divorce Code is structured. *Ferri v. Ferri*, 129 P.L.J. 449, 450 (1981). Justice and fairness are the primary considerations with regard to equitable distribution. *Cauffiel v. Cauffiel*, 25 D.&C.3d 137, 144 (1981). The concept of equitable distribution recognizes the role played by the dependent spouse and entitles that spouse to share in assets accumulated during the marriage. See e.g., *Woliner v. Woliner*, 132 N.J. Super. 216, 333 A.2d 283 (App. Div.), aff'd 68 N.J. 324, 344 A.2d 781 (1975).

However, the Divorce Code does not specifically address the particular equitable distribution issue we now face. While section 505 of the Divorce Code

status of the parties. *Williams v. North Carolina (I),* 317 U.S. 287 (1942); *Williams v. North Carolina (II),* 325 U. S. 226 (1945); U. S. Const. Art. IV. Section 1.

3. 23 P.S. §505. Alimony where a foreign, ex parte divorce or annulment:

"Whenever a person who was a resident of this commonwealth at the time such a person was a defendant or respondent in a foreign ex parte action for annulment or divorce petitions a court of this commonwealth for alimony and establishes the need therefor, such court, if it has jurisdiction over the person or property of the other party, may order that such alimony be paid in the same manner and under the same conditions and limitations which pertain when alimony is sought as provided in this chaper. . . ."

specifically permits a Pennsylvania resident to bring a claim for alimony following a foreign, ex parte divorce decree, there is no similar "divisible divorce"[4] provision with regard to equitable distribution.[5] Notwithstanding the absence of specific code language, vital social policy considerations, caselaw and the express policies and intent of the Divorce Code compel me to grant Helen Line's request for post-divorce economic relief.[6]

Equitable distribution was not at issue during the Nevada divorce proceeding, nor was it part of the judgment. Therefore the foreign divorce proceeding was res judicata[7] only with respect to the marital

---

4. The doctrine of "divisible divorce" recognizes that while a foreign divorce decree is valid with regard to the marital status of the parties, it is not necessarily dispositive of the economic aspects of the divorce. *Stambaugh v. Stambaugh,* 458 Pa. 147, 329 A.2d 483 (1974).

5. A lack of specific statutory authorization does not preclude the application of the doctrine of "divisible divorce" to other forms of economic relief. In *Sohmer v. Sohmer,* the Superior Court held that section 505 specifically authorized the award of domestic alimony to a Pennsylvania resident following a foreign divorce decree, but only when the foreign proceeding was ex parte. *Sohmer v. Sohmer,* 318 Pa. Super. 500, 465 A.2d 665 (1983). This holding is consistent with a reading that with *all foreign divorce decrees,* ex parte and non-ex parte, *other economic relief is available.*

6. "Logically, the concept of 'divisible divorce' should also apply in an action for property distribution, so that the distribution of marital property is controlled by Pennsylvania law. There is a strong public policy argument favoring distribution in this situation in spite of the omission of specific language in Chapter 4." J. Rounick, Pennsylvania Matrimonial Practice, §21:4, at 351 (1986).

7. The basic proposition of res judicata is that a party should not be allowed to relitigate a matter that it already had the opportunity to litigate. Hazard, Geoffrey C., Jr., Civil Procedure, Third Edition, page 589 (1985).

status of the parties and was not final with respect to the economic issues. *Cheng v. Cheng*, 347 Pa. Super. 515, 500 A.2d 1175, 1180 n.2 (1985). Consequently, the doctrine of res judicata does not preclude Helen Line from now litigating these economic matters.

Furthermore, it is significant that the Nevada court had neither jurisdiction over the parties nor jurisdiction over the property located in Pennsylvania. While Nevada could issue a valid ex parte decree in divorce without in personam jursidiction over the defendant,[8] Nevada could not have made a final determination with respect to ancillary economic claims. See *Estin v. Estin*, 334 U.S. 541, 547-549 (1948). Jursidiction over property matters in a divorce case could exist within the jurisdiction of the state where the property is located, *Cheng,* supra at 1180. Consequently, the Nevada court could not hear the financial and property aspects of the divorce because it did not have jurisdiction to hear these matters. *Simon v. Simon*, 478 F. Supp. 548, 551-52 (E.D. Pa. 1979). See also, *Hall v. Hall,* 131 P.L.J. 413 (1983).

A broad grant of jurisdiction[9] is found in section 401(c) of the code:

"(c) *In all matrimonial causes,* the court shall have *full equity power and jurisdiction* and may issue injunctions or other orders which are *necessary*

---

8. The plaintiff's domicile alone is a valid basis for a state's divorce jurisdiction in an ex parte proceeding. *Williams v. North Carolina*, 317 U.S. 287, 297-299 (1942).

9. "Section 401(c) is, perhaps, the most far-reaching power heretofore given to a court in a matrimonial cause to protect the interests of the parties and to effectuate the purposes of the new Divorce Code." J. Rounick, Pennsylvania Matrimonial Practice §18:6 at 172X (1986).

*to protect the interests of the parties or to effectuate the purposes of this act,* and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause." 23 P.S. §401(c) (emphasis added).

Additionally, §301 speaks of jursidiction:

"(a) The courts of this Commonwealth . . . shall have original jurisdiction in cases of divorce . . . and, where they have jurisdiction, shall determine in conjunction with *any decree* granting a divorce or annulment the following mattters, where raised *in the complaint* or the answer and issue appropriate decrees or orders with reference thereto and may retain continuing jurisdiction thereof:

"(1) The determination and disposition of property rights and interest between spouses . . . ." 23 P.S. §301 (a) (emphasis added).

Pennsylvania clearly has jurisdiction in this case and is competent to hear economic claims which are incidental to the marital relationship.

Furthermore, there are strong public policy grounds for hearing economic claims of a Pennsylvania resident following a foreign, ex parte divorce decree.

Pennsylvania has a vital interest in resolving the divorce-related claims of its residents when the matrimonial domicile is located in Pennsylvania.[10] Pennsylvania is not only the more appropriate forum for hearing these matters, but with the passage

---

10. The doctrine of "divisible divorce" codified in section 505 recognizes this principle by allowing the more interested forum to adjudicate the varied rights of its domiciliaries *Cheng,* 500 A.2d at 1179.

of the 1980 Divorce Code, Pennsylvania has manifested the intent to make equitable distribution available to its residents. It would be unfair to prevent residents from receiving their equitable share of marital property just because the marriage was terminated in another state. This would allow a spouse to obtain a foreign divorce and defeat the public policy and purpose of equitable distribution in Pennsylvania. See *Woliner,* supra, 132 N.J. Super. 216, 333 A.2d 287-88. Pennsylvania must protect the interests of its residents.

There is nothing in the plain language of the equitable distribution section that limits the applicability of equitable distribution to domestic divorce decrees. Had the Legislature intended to so restrict equitable distribution it could have done so.[11]

Indeed, the Legislature used broad, expansive terms rather than narrow language to express the policy and intent of the 1980 code:

"(a) . . . (It is) the policy of the commonwealth of Pennsylvania to:

. . .

"(6) *Effectuate economic justice* between parties

---

11. The appellate division of the New Jersey Superior Court used a similar argument in *Woliner v. Woliner,* supra. The court awarded equitable distribution after a foreign divorce decree despite the lack of a specific statutory provision allowing such. The court noted that equitable "distribution is a supplement to the right to alimony, . . . available wherever alimony is available to the extent deemed just by the court". 132 N.J. Super. 216, 333 A.2d at 288. Denying one spouse the right to a division of the marital estate because the other spouse obtained a foreign divorce would "subvert the essential goals" of the equitable distribution provision, and could not have been intended by the Legislature. 132 N.J. Super. 216, 333 A.2d at 288.

who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

"(b) The objectives set forth in subsection (a) shall be considered in construing provisions of this act and shall be regarded as expressing the legislative intent." 23 P.S. §102(a) (6), (b) (emphasis added).

The thrust of the 1980 Divorce Code is to promote economic justice between divorced parties. *Young v. Young,* 320 Pa. Super. 269, 277, 467 A.2d 33, 37 (1983), rev'd on other grounds, 507 Pa. 40, 488 A.2d 264 (1985). To foster this economic justice policy, the Legislature provided the courts with broad jurisdiction and the equity power to fashion appropriate remedies. 23 P.S. §§401(c), 301(a). The code also provided equitable distribution and alimony specifically as methods of achieving a fair, equitable determination and settlement of property rights. 23 P.S. §401(d). See e.g., *Goldstein v. Goldstein,* no. E3004/85, Slip op. at 5-6 (Pa. Super., Montemuro, J., filed June 18, 1986).

Alimony and equitable distribution are both incidental to divorce. It is illogical to hear a claim for alimony following an ex parte divorce yet at the same time refuse to hear a claim for equitable distribution.

The facts of this case show that Helen Line did not have the opportunity to fully and fairly litigate her economic claims in the foreign, ex parte proceeding. To now deny her the opportunity to ever litigate these matters would be to defy the spirit and mandate of the 1980 Divorce Code. This inequitable and anomalous result compels me to grant Helen Line's request for post-divorce economic relief.

## Partition Action

Counsel for John Line contends that his action for partition is based on the Divorce Code and on Pennsylvania real property law. Prior to enactment of the Divorce Code, partition of property was indeed the equitable remedy for dividing property. However, the code has pre-empted prior law in this regard. See e.g., *Gill v. Gill,* 31 D.&C.3d 574 (1982).

Partition divides property evenly. Equitable distribution, as opposed to partition, attempts to distribute all property acquired during the marriage in proportions which are just and fair. *Strock v. Strock,* 22 D.&C.3d 118 (1982). The *Strock* court observed that "allowing such an action [partition] to proceed would defeat the legislative purpose and intent of the Divorce Code." *Strock,* supra at 121.

In *Altemus v. Altemus,* 29 D.&C.3d 314 (1984), the court was also faced with equitable distribution and partition actions. The court concluded that the equitable distribution of marital property reflected "the legislatively preferred avenue of property distribution under the Divorce Code." *Altemus,* supra at 318.

Support for the equitable distribution of property, rather than its partition, is found in section 401(d) of the Divorce Code:

"In a proceeding for divorce, or annulment, the court shall, upon request of either party, equitably divide, distribute or assign marital property . . . in such proportions as the court deems just after considering all relevant factors. . . ." 23 P.S. §401(d)

The real estate at issue is presumed to be marital property under section 401(f) and therefore is subject to equitable distribution unless John Line can show that it was acquired by a method listed in section 401(e). However, John Line does not aver that this real estate is not marital property. Nor does he

claim that the property was misappropiated.[12] The court's power to direct a partition of property is qualified by its duty to divide marital property in an equitable way. *Platek v. Platek,* 309 Pa. Super. 16, 24, 454 A.2d 1059, 1062-63 (1982). The petition to partition real estate is therefore dismissed.

## CONCLUSION

Therefore, for all of the foregoing reasons, I enter the following

## ORDER

And now, this September 3, 1986, after consideration of Helen Line's complaint in divorce requesting economic relief, John Line's preliminary objections to the complaint in divorce, and John Line's petition for partition, it is ordered that Helen Line's complaint in divorce requesting economic relief is granted and John Line's preliminary objections and petition for partition are dismissed.

And further it is ordered that the support order entered on May 10, 1985, effective date January 16, 1985, is vacated effective on March 13, 1985.

---

12. In *Goldstein v. Goldstein,* No. E3004/85, Slip op. (Pa. Super., Montemuro, *J.,* filed June 18, 1986) the Superior Court held that a pre-divorce petition for partition of jointly-held property which asserted misappropriation of funds could be heard by the trial court and was not pre-empted by the passage of the Divorce Code.