Filed 11/29/22 Marriage of Pauly CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| In re Marriage of JAMES D. and DEBORAH L. PAULY. | |
| JAMES D. PAULY, Appellant, v. DEBORAH L. PAULY, Respondent. | G059786 (Super. Ct. No. 15D007308) O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Julie A. Palafox, Judge. Reversed and remanded with instructions.

Law Offices of John S. Cowhig and John S. Cowhig for Appellant.

Law Offices of Lisa R. McCall, Lisa R. McCall and Erica M. Baca for Respondent.

## INTRODUCTION

Family court is a court of equity. (See *In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 310.) When husband and wife dissolve their marriage, the family court is bound to divide the community estate equally unless the parties agree otherwise. Each side is entitled to their share of said estate, and no more.

In this case, husband retired from active military service while he and wife were still married. When the couple divorced, they agreed to split the community share of husband's military pension equally, with the understanding that wife would eventually get paid her portion of the monthly benefit directly by the pension fund. She began receiving direct payments from the pension fund in 2019. But she sought an award of back payments of pension benefits she was owed, going back to the date of the couple's separation in 2015. Husband opposed this request, arguing wife had received increased temporary spousal support instead of a monthly pension benefit and should be equitably estopped from asserting her claim to any more retrospective benefits.

The trial court rejected husband's contention and awarded wife years' worth of back-owed pension benefits. We agree that wife was entitled to back payments of pension. But we find the trial court should have, but did not, credit husband for the increased support he paid to wife. For this reason, we must reverse and remand so the trial court can calculate the amount of the credit, if any, and deduct it from wife's recovery.

## FACTS

James Pauly and Deborah Pauly were married for more than 30 years before they separated on January 5, 2015.[1] James filed for dissolution of their marriage on August 20, 2015. Deborah requested spousal support, and on June 1, 2016, the parties entered into a stipulation whereby James agreed to pay Deborah $11,000 per month in

---

[1] The couple has two adult children.

temporary support. James had been in the active military and retired during the parties' marriage. At the time of the stipulation as to temporary support, James had disclosed he was receiving $3,637 per month in military pension benefits. He had been receiving these pension benefits during the marriage as well. The parties had included no specific calculation supporting the $11,000 temporary support figure, but they had negotiated regarding the impact of the pension on temporary support and future property division.

The court entered judgment terminating the parties' marital status in November 2016, but trial was reserved on several issues, including division of community assets. When trial was set to begin on the reserved issues in September 2017, the parties advised the court they had entered into a settlement on certain issues regarding property division, and a stipulation and order for partial judgment was entered on September 13, 2017. In the stipulated judgment, the parties agreed Deborah was entitled to a portion of the pension benefit, and the parties would split the community portion of the benefit equally pursuant to a Military Division Order (MDO) still to issue. The judgment also contained a constructive receipt provision – if the pension plan paid James any benefits that were to be assigned to Deborah, James would immediately reimburse her within 10 days. The parties further agreed the court would "retain jurisdiction to make any orders to affect an equal division of the community interest" in the pension or to ensure benefits were rightly assigned.

Trial went forward on the remaining issues and judgment on them was entered on May 21, 2018. James was ordered to pay $9,200 per month in spousal support with a yearly step-down in amount. Property division remained the same. Deborah was still entitled to 50 percent of the community interest in the pension. The final judgment also contained the same provisions allowing the court to retain jurisdiction to effectuate an equal division and declaring James in constructive receipt of any benefits belonging to Deborah.

3

On October 16, 2018, the court entered a stipulated order for division of the pension, which awarded Deborah 30.15 percent of the full monthly benefit. James would hold any sums payable to Deborah in constructive trust until she was actually paid, and the constructive trust would be applicable until Deborah began receiving direct payments. It would also be applicable for any month for which Deborah did not receive a direct payment. On May 31, 2019, Deborah began receiving $1,153 per month as her share of the pension.

Deborah filed a request for order (RFO) seven months later, on December 26, 2019, seeking, among other things, $60,533 in pension benefits received by James which should have been paid to her, plus interest. This amount was calculated based on her share of $1,153.01 per month, which she claimed James was paid between their date of separation (January 5, 2015) until May 31, 2019 – a total of 52 and one-half months. James opposed the RFO in this respect, arguing the pension had been incorporated into Deborah's temporary spousal support order, allowing her increased payments. He also said Deborah had failed to raise this issue at the time of trial.

The court, in an admirable attempt to understand precisely what was owed Deborah and what had been paid, entertained lengthy argument and both invited and reviewed voluminous filings by the parties. After taking the matter under submission, the court issued its decision on November 9, 2020. It found Deborah was entitled to $59,956 of the pension benefits distributed to James beginning at the date of separation through to May 2019, plus interest. It denied James' request to invoke equitable theories to either bar or offset Deborah's recovery on the benefits owed, noting he had stipulated to $11,000 in temporary monthly support without requiring any credit or offset against the eventual division of the pension benefit. The court concluded James had shown no prejudice from Deborah's raising the retroactive pension issue two years after trial.

4

**DISCUSSION**

On appeal, James makes three arguments. First, he contends Deborah forfeited her retroactive right to monthly benefits because she did not request any part of those benefits in the trial itself. Second, he claims he should have gotten some sort of equitable credit, full or partial, against pension benefits awarded to Deborah because he owed her higher temporary support – ostensibly in exchange. Third, he contends the court's award to Deborah improperly effectuated an unequal division of the community estate in violation of Family Code section 2550.[2] While we disagree with James on his first argument, we agree the trial court's ruling resulted in an unequal division of assets.

**I.**        **Forfeiture of Right to Benefits Between Date of Separation and Trial**

"The general rule under [*In re Marriage of*] *Brown* [(1976) 15 Cal.3d 838], . . . is that 'pension rights, whether or not vested, represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding.' (*In re Marriage of Brown*, *supra*, [at p.] 842.) A retiree's *pension income* is therefore subject to division, most commonly based on a fraction involving the years worked by the employee spouse during the marriage compared to the total years worked." (*In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 406-407.) James did not dispute Deborah was entitled to her share of the pension from the date of separation, and even before that date. Instead, James believes Deborah was obligated to seek her share of the pension benefits when the case went to trial.

A review of both the stipulated 2017 judgment and the final 2018 judgment convinces us to reject this argument. Both judgments awarded Deborah 50 percent of the community portion of the pension benefits. It was recognized by all parties that the MDO would ultimately determine how much of the pension benefit Deborah should get.

---

[2]        All further statutory references are to the Family Code.

5

Deborah had forfeited nothing; the right to pension benefits was memorialized in the judgment, and they only needed to wait for the MDO to know the exact amount. James seems to agree because, as he notes, the trial court determined pension payments were not omitted assets.[3]

"Generally, once a marital dissolution judgment has become final, the court loses jurisdiction to modify or alter it. (*In re Marriage of McDonough* (1986) 183 Cal.App.3d 45, 53; *Mueller v. Walker* (1985) 167 Cal.App.3d 600, 605.) Under the doctrine of res judicata, "'[i]f a property settlement is incorporated in the divorce decree, the settlement is merged with the decree and becomes the final judicial determination of the property rights of the parties.'" (*Giovannoni v. Giovannoni* (1981) 122 Cal.App.3d 666, 669.) In short, marital property rights and obligations adjudicated by a final judgment cannot be upset by subsequent efforts to 'modify' the judgment." (*In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 499.)

James argues that because the pension was not an omitted asset, Deborah's RFO was an attempt to modify the judgment and the trial court's ruling resulted in a reallocation of the pension. The first problem with this argument is James conceded Deborah was entitled to her share as of the date of separation. But even leaving that aside, James' logic is circular. If the pension was not omitted, then Deborah's share is necessarily in the judgment; we look to the judgment. The judgment entitled Deborah to 50 percent of the community share. And the court had continuing jurisdiction to enforce Deborah's right to her share. Did Deborah really need to spell out for James and the court the exact time period for which she was entitled to benefits? We don't think so.

---

[3]    The omitted asset doctrine stems from section 2556, which states: "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability."

6

Another tortious argument by James came at the hearing in the trial court. James' counsel argued the September 2017 judgment was only effective as of September 2017 going forward. Thus, he claimed, the stipulated judgment did not entitle Deborah to the benefits James had received between January 2015 and September 2017. This argument is completely lacking in merit. To start, Deborah's interest in her community share of the pension arose during the marriage itself. (See § 751 ["The respective interests of each spouse in community property during continuance of the marriage relation are present, existing, and equal interests."].) Additionally, as Deborah correctly points out, the parties stipulated they would divide the community portion of the pension *equally*, with August 2, 1984, as the date of marriage and January 5, 2015, as the date of separation for purposes of the MDO. This language indicates the parties understood the community share was to be divided as of the date of separation.

## II.        Equal Division of Assets/Equitable Offset

James' second and third arguments dovetail. As section 2550 states: "Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall, either in its judgment of dissolution of the marriage, in its judgment of legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally." Equal division is the default rule.

If "the parties agree upon the property division, no law requires them to divide the property equally, and the court does not scrutinize the [marital settlement agreement] to ensure that it sets out an equal division." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 666.) But in stipulating to the division of certain assets in September 2017, the parties here took their cues from section 2550 – they *explicitly* agreed to an equal division of the pension. Thus, a proper enforcement of the settlement means the community portion of the pension *must* be equally split between Deborah and James.

It is undisputed James' military pension benefit was factored into temporary support in 2016. And the monthly support amount was *higher as a result*. According to guideline support calculations submitted to the court by James' counsel in 2020, had Deborah begun receiving her share of the pension benefit earlier, support would only have been $10,631 per month rather than $11,000. This means that, between at least February 2016 when the stipulated support order was entered and at least May 2018 when the judgment was entered setting permanent support at $9,200 per month (with step-down), James was overpaying by about $300 per month. The trial court acknowledged this possibility after reviewing the calculations.

Thus, even if Deborah's RFO had merit as to back-payment of pension benefits, any such recovery necessarily had to take into account these overpayments. There had to be an offset. To hold otherwise would not only risk an unequal division of the pension (which was not in keeping with the parties' agreement), but also a windfall to Deborah. She is entitled to be paid her share, not to be paid twice. For this reason, we reverse and remand so the trial court can conduct hearings and fact-finding to determine how much the offset should be.

There was much discussion in the trial court about *Henn v. Henn* (1980) 26 Cal.3d 323 (*Henn*). In *Henn*, husband's military pension was actually an omitted asset in the judgment. (*Id.* at p. 327.) Our Supreme Court held wife was entitled to seek her community share of it. (*Id.* at pp. 330-331.) In doing so, the court acknowledged it might be inequitable to allow wife to claim retrospective pension benefits if she received higher support payments in lieu. (*Id.* at p. 332.) Thus, the court suggested husband "seek to limit" such retrospective enforcement of wife's claim to the pension "on an equitable estoppel theory by demonstrating that she in fact received additional support payments in lieu of a share in the pension." (*Ibid.*, fn. omitted.)

*Henn* is not really on point here, because James' military pension *was* adjudicated in the judgment. As a result, there is no need to bring in an equitable

estoppel theory to effectuate an equal division of the pension benefits. Instead, the trial court could just follow the judgment itself and effectuate an equal division. This includes calculating how much additional support Deborah received in lieu of receiving her monthly share of the benefits and deducting it from her pension award.

Both Deborah and the trial court argued James could have insisted on an offset or credit in the stipulated judgment. Because he did not, they conclude he essentially forfeited the right to an offset. We disagree. James could have insisted on including an offset in the stipulated judgment, no doubt, but his failure to do so does not change the fundamental agreement. The community share of the pension was to be divided equally and Deborah is entitled to 30.15 percent of the monthly benefit. Nothing more, nothing less.

## DISPOSITION

The order is reversed and remanded for further proceedings to calculate the amount of offset to which James is entitled and to modify accordingly the award of back payments of pension to Deborah. James to recover his costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


GOETHALS, J.


MARKS, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9